## Hibshman *against* Dulleban.

The judgment of a court of concurrent jurisdiction directly upon the point, is, as a plea, a bar; or, as evidence, conclusive, between the same parties in the same matter directly in question in another court. The judgment of a court of exclusive jurisdiction directly upon the point, is in like manner conclusive upon the same matter between the same parties coming incidentally in question in another court for a different purpose. But neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment.

ERROR to the district court of *Lancaster* county.

John Dulleban brought this action on the case against the executors of Martin Laber deceased.

The action is for a legacy; to which the defendants pleaded a release. The plaintiff replied, that this release was obtained by fraud, covin and misrepresentation. The rejoinder of the defendants set forth, that on the exhibition of the administration account of these defendants, as executors of Martin Laber deceased, the present plaintiff then excepted to the account, on which occasion this release was exhibited to the orphan's court as a full answer to, and satisfactory bar of the said exceptions; that it was held, decreed and adjudged by the said court, to be a good, fair and valid release; and that the decree, sentence and judgment still remain in full force and effect. The defendants thereupon pray judgment, if plaintiff ought to be permitted or received against the record to reply, &c.

The plaintiff by his surrejoinder, after protesting that the release, if valid, was only an acquittance under seal, for 104 pounds 13 shillings, in part of his demand, averred that the orphan's court, having received the said exceptions, attached them to the administration

[Hibshman v. Dulleban.]

account, and made a record that the said account was on the 20th December 1825, read and excepted to. That the said administration account, thus excepted to, and no other matter or thing relating thereto, remained of record and for adjudication in the orphan's court from 20th December 1825 until the 23d December 1827, when the said orphan's court heard the executors and their proofs, and the exceptants and their proofs, relative to the said matter in issue : to wit, the said account and exceptions thereto. That the said court held the same under advisement from the 23d March to the 24th September 1827, when they delivered their opinion and decree upon the said matter in controversy, revising, correcting and adjudicating upon said account and the exceptions thereto, and decreeing a much larger balance to be due by the said executors than the said executors had charged themselves with.

That the administration account and exceptions only put in issue and controversy for decision by the said orphan's court the amount of balance due by said executors upon the said account, as by said account and exceptions and the opinion of the orphan's court, all of which are made a part of the surrejoinder, more fully and at large appears, and not the fraud, covin and misrepresentation, by which the said John Dulleban in his said above replication alleges that the said executors obtained the said paper purporting to be a release, &c., nor any other matter relative to the said paper so pleaded as aforesaid, purporting to be a release. Without this, that the said orphan's court legally, judicially, &c. decided the said paper to be a valid release, and that the said plaintiff is estopped thereby from being admitted or received against the said record of the orphan's court to reply the said replication by him above replied, &c.

To this surrejoinder, the defendant demurred generally and specially, and presented to the court for causes of demurrer,

1. That it does not appear but that the said John Dulleban is estopped by the decree of the orphan's court, from replying that the release was obtained by fraud.

2. That the matters of fact in the surrejoinder, so far as they are sufficiently set forth and pleaded, are not a sufficient answer in law to the matters pleaded in the rejoinder of the said defendants : to wit, that the said sentence and decree of the orphan's court as aforesaid, being in full force and effect, not in the least reversed, appealed from and made void, were conclusive and binding upon the said parties.

3. That the surrejoinder is a departure, in alleging that the release in the said rejoinder mentioned, if valid, is only an acquittance under seal, for 104 pounds 15 shillings, in part of the demand made in the aforesaid action, the plaintiff's replication having alleged that the said release was obtained by fraud, covin and misrepresentation, and by no means suggested and declared that the said release was not a general acquittance and discharge of the executors.

4. That the surrejoinder is double and uncertain, and is mixed up of matters of fact and matters of law, and wants form, &c.

The Court (Hays, president) delivered this opinion on the causes of demurrer:

1. The first is manifestly insufficient in alleging that it does not appear but that the said John Dulleban is estopped; because an estoppel, as it precludes a party from alleging the truth, must be certain to every intent, and is not to be taken by argument or inference, but ought to be a precise affirmation of that which makes the estoppel. *Co. Litt.* 352, 305.

2. The second cause, that is, that the matters of fact in the surrejoinder, so far as they are well pleaded, are not a sufficient answer in law to the matters pleaded in the rejoinder, is nothing more in effect than the repetition of the general demurrer.

A special demurrer must show wherein the objectionable pleading is insufficient, double, uncertain, &c. *Steph. on Pl.* 160. For the statute, by requiring the demurrant to show cause, intended, as the books say, that he should lay his finger on the very point. 2 *Salk.* 678, *pl.* 5, *per Holt, C. J.*

3. Had the plaintiff set forth the effect of the release in the body of his surrejoinder, his pleading would unquestionably have been obnoxious to this objection. *Steph. on Pl.* 235, 237. But this he has not done; but on the contrary, has alleged the fact in his *protestando:* and no point in pleading appears to be more clearly settled, than that an erroneous *protestando* is not the subject of exception, even by special demurrer. 2 *Saund.* 103, *(a) n.* 1; 1 *Chit. Pl.* 590, 591.

4. This fourth cause of special demurrer is comprised in general allegations, to which the remarks made in reference to the second cause, are perfectly applicable, the demurrants having omitted to state the particulars in which the surrejoinder is double, uncertain, wants form, &c.

A demurrer, because *incerta et caret forma,* is a general demurrer. 5 *Bac. Ab.* 461; *Shower* 2; 2 *Comb.* 297.

Let us then consider the substantial objection to this surrejoinder, in point of law, under the general demurrer.

The rejoinder, as we have seen, had alleged that the executors of Martin Laber (these defendants) exhibited their administration account in the orphan's court, and exceptions thereto were filed by the present plaintiff's attorney, that the release here pleaded was then exhibited to the said court as a full answer and a satisfactory bar to said exceptions, and that the said release was held, pronounced, decreed and adjudged to be a good, fair and valid instrument in writing or release between the said parties, to wit the said John Dulleban the exceptant and plaintiff as aforesaid, and the said executors, accountants as aforesaid and defendants in this action; which decree, sentence and judgment still remain in full force and effect; and therefore the plaintiff ought not to be permitted to reply the replication by him replied in this case.

To this the surrejoinder answered, that the exceptions were exhibited by Conrad Mentzer, John Dulleban and the trustees of

Henry Dulleban ; that the orphan's court received the exceptions, attached them to the account and made a record thereof ; that the said account was, on the 20th December 1825, "read and excepted to."

That the said account thus excepted to, and no other matter or thing relating thereto, remained of record and for adjudication in the orphan's court from the 20th December 1825 until the 23d December 1827, on which last day the orphan's court heard the executors and their proofs, and the exceptants and their proofs, relative to the said matter in issue, to wit the said account and exceptions thereto.

That the said court held this matter under advisement from the 23d of March 1827 to the 24th of September 1827, when they delivered their opinion and decree upon the said matter in controversy, revising, correcting and adjudicating upon said account and the exceptions thereto, and decreeing a much larger balance to be due by the said executors than they had charged themselves with. That the said administration account and the exceptions thereto only put in issue and controversy, for decision by the said court, the amount of balance due by the said executors upon the said account, as by the said account and exceptions and the opinion of the said orphan's court (all of which are made a part of the surrejoinder) more fully and at large appears; and not the fraud, covin and misrepresentation, by which the plaintiff in his replication alleges that the executors obtained the said paper purporting to be a release, nor any other matter relative to the said paper, &c. Without this, that the said orphan's court legally, judicially, &c. decided the said paper to be a valid release, and that the said John Dulleban is estopped thereby from being admitted or received against the said record of the orphan's court to reply the said replication by him above replied in this suit, &c.

The special demurrer not being sustained, the facts set forth in the surrejoinder must be taken to be well pleaded and as true.

The question then is, are they in law a sufficient answer to the rejoinder?

The allegation of that plea is, that the release was decreed by the orphan's court to be a valid release, on the hearing of the plaintiff's exceptions to the administration account of the defendants ; wherefore the defendants conclude by their rejoinder, that the plaintiff ought not to be permitted against the record to reply in this suit that the same release was fraudulent. The surrejoinder denies that the release was in issue, or that the court decided that it was a valid release, and denies the conclusion that the plaintiff is estopped by the record to reply the replication which he has replied in this suit.

Had the surrejoinder not made the opinion of the orphan's court, by reference, a part of itself, this denial alone would have been conclusive, because, if the release was not in issue, and if the orphan's court did not decide that it was a valid release, the objection to the replication utterly fails.

[Hibshman v. Dulleban.]

The opinion shows that the release was before the court; that the right of any other than the trustees of Henry Dulleban to except to the administration account was denied by the accountants; and that the court decided, as to Conrad Mentzer and John Dulleban (the plaintiff here), that the objection to their right of interference was a valid one, on the ground that they were parties to this release; which the court said was general and unrestrictive in its terms, and that no attempt had been made to impeach its fairness and efficacy. But the orphan's court declared that the release could not affect the interests of Henry Dulleban and his trustees, and that the exceptions filed on their behalf were entitled to the consideration of the court.

The exceptions were generally applicable to the items of the account to which they referred, and were not dependent on the particular claims of the individual exceptants. The court, therefore, proceeded to consider every one of the exceptions in the same way as they would have done, provided all the exceptants had been admitted to a hearing; and the account was materially corrected.

The matter in issue was, whether or not the administration account, *quoad* the objectionable items, was a just and true account of the administration of these executors.

The question which was incidentally raised on the hearing was, whether Conrad Mentzer and John Dulleban were entitled to except to the account; and the court did undoubtedly pass upon this release, so far as was necessary to enable them to found a judgment on this incidental and preliminary question, but no further.

I apprehend that this, indeed, was the utmost limit of their authority; for this release purports to be a release of a legacy, a species of claim to which the limited jurisdiction of the orphan's court does not extend. By an act of assembly, a remedy is provided for the recovery of such a claim by an action at law. If the orphan's court could not decide that John Dulleban is or is not entitled to the legacy which by the present action he demands, could they decide conclusively upon the validity of a deed or writing vitally connected with his right of action? Will the law thus allow that to be accomplished by indirection, the doing of which directly it prohibits? Certainly not. This answer is decisive of the present demurrer; for it appears to me that the question it presents is substantially that which I have just stated.

I am of opinion that the orphan's court did not undertake to decide upon the character of the release in question in such a manner as would preclude the plaintiff from replying as he has done in his replication in this suit; and that they had not jurisdiction over the subject matter to that extent, had they even been disposed to carry their authority so far.

Let judgment on the demurrer be entered for the plaintiff.

The court then thus disposes of two motions on the subject of the pleadings.

[Hibshman v. Dulleban.]

In this case two motions were entered upon the minutes of the court on the 6th of February last.

Mr Parke moved to strike off the rejoinder entered on the 30th of October 1833, for reasons filed; and on the same day Mr Hopkins moved for leave, before judgment is entered on the demurrer, to withdraw the same, in order to rejoin that the release was not obtained by fraud, &c.

These two motions were argued at the adjourned court in October, by Mr Parke and Mr Franklin.

To comprehend the question, it is necessary to advert to the proceedings had anterior to the motions.

The suit was a summons in case for a legacy; and on the 25th of April 1831, the plaintiff filed his *narr.* setting forth the bequest in the last will and testament of Martin Laber deceased, the appointment of the defendants as executors, the death of the widow, granting of letters testamentary, assets, &c.

To this declaration, the defendants on the 15th of February 1832, pleaded a release.

And the plaintiff replied, that the release was obtained by fraud, covin and misrepresentation.

On the 18th of June 1833, the defendants rejoined at length, that the plaintiff was estopped to reply the release, by certain proceedings which had taken place in the orphan's court, and which were set forth in the rejoinder.

The plaintiff surrejoined, specially traversing the estoppel.

On the 29th of June 1833, the defendants demurred generally and specially, in which on the 10th of July following, the plaintiff joined.

On the 6th and 7th of January 1834, the demurrer was elaborately argued; and the court, having held the matter under consideration, delivered, on the 6th of February, their opinion thereon, and directed judgment to be entered for the plaintiff; which was accordingly done.

Some time afterwards on the same day, Mr Hopkins requested the court to suspend this judgment; which request, without being granted or refused, was ordered to be noted on the minutes.

Mr Parke next moved to strike off the rejoinder entered in this case on the 30th of October 1833; it being, as he alleged, irregular, erroneous, and after the issue formed in law upon the only pleadings then in the cause in which defendant had rejoined an estoppel, it either having been entered in the office in the ordinary way, or before the court, without notice to the plaintiff.

On the same day, Mr Hopkins submitted his motion, for leave, before judgment is entered on the demurrer, to withdraw the same, in order to rejoin that the release was not obtained by fraud, &c.

To the rejoinder of the 30th of October 1833, two objections were urged:

1st. That the defendants could not rejoin two distinct matters, as

[Hibshman v. Dulleban.]

they have attempted by two several surrejoinders to do here; having formerly rejoined an estoppel, and by this second rejoinder traversing the fraud, &c. averred in the plaintiff's replication.

The old common law strictness which restrained defendants from pleading more than one plea to the plaintiff's declaration, was reformed by the statute of 4 *Anne, c.* 16, 3, 4, 5, which made it lawful for any defendant, with leave of the court, to plead as many several matters as he should think necessary to his defence.

But this relaxation goes no further than the plea; it does not extend to the replication or other subsequent proceedings, with reference to which the parties are forbidden, by the rules of pleading, to join several replications to the same plea, or several rejoinders to the same replication, and so on.

The second rejoinder in this case is, therefore, irregular.

2d. The second objection is quite as decisive.

A party cannot plead and demur to the same matter. He must make his election, in order that a single issue only, in respect of a single subject, should be produced. *Steph.* 327. The statute of Anne gives no authority for demurring and pleading to the same matter.

Three months after the defendants had demurred to the plaintiff's surrejoinder, they file a second rejoinder to the replication, whilst their demurrer is still pending; the effect of which was to make up an issue of fact on the same matter as to which the demurrer had raised an issue in law. This is not allowable.

I am of opinion, therefore, that this rejoinder of the 30th of October 1833, should be struck off.

With respect to the motion to withdraw the demurrer, it was permitted to be entered, subject to every exception. Nothing done or omitted by the court, in reference to it, can be considered as lending it any sanction. The demurrer was well argued, and the court held it under advisement for a month. The opinion was read; the order to enter the judgment distinctly announced; and after this, though on the same day, the defendant's counsel submitted the request to suspend the judgment. The judgment was not suspended, but the request was directed to be noted on the minutes.

The next step on the part of the defendants was, on the same day, to move for leave to withdraw the demurrer. This motion is without precedent. The defendants had elected their course; they had tendered an issue in law; they had enforced it with well prepared arguments; and the court, on full consideration, had decided that issue. And after such decision, comes the request that the court would not decide; after judgment ordered and entered, it was asked that the court would not give judgment: and then leave was moved —leave before judgment was entered on the demurrer—to withdraw the same, in order to rejoin anew.

There must be an end of every controversy; a period of repose to all litigation. *Interest reipublicæ ut sit finis litium.* In Burke *v.* Hoo-

[Hibshman v. Dulleban.]

ver, this court decided that there could be no amendment after judgment on demurrer. Surely the party is sufficiently indulged, if at any time before judgment, even after argument, he may amend his faulty pleadings, and place himself *rectus in curia*; if he lies by, and takes his chance of a decision in his favour, he ought not to expect that the court will then suffer him to unravel, not only his own work, but theirs, on finding that the judgment is against him. Is his adversary to be delayed for ever ? Is the solemn adjudication of the court to be taken for an idle ceremony ? Must the party's own choice of the issue to be decided be treated by him as a mere experiment upon the court?

This has not, indeed, been contended for ; yet it is manifest that such must be the effect of allowing the demurrant to withdraw his demurrer, and alter his pleadings after judgment against him. This is nothing less than an amendment after judgment. If allowed to the demurrant, it could not be denied to the party joining in the demurrer ; and hence it is clear that all proceedings on demurrer would result in nothing but delay and an unprofitable waste of labour and time.

I am of opinion, then, that the judgment on the demurrer in question ought not to have been suspended ; and that the defendants should not have leave to withdraw their demurrer.

Motion of plaintiff's counsel granted. Motion of defendants' counsel denied.

Assignment of errors :

1. The court erred in entering judgment on the demurrer in favour of the plaintiff, when it should have been entered in favour of the defendants.

2. If the plaintiff was entitled to any judgment at all, it was only to judgment *quod respondeat ouster* and not to judgment *quod recuperet.*

3. The court erred in striking off the rejoinder of the defendants to the plaintiff's replication added on the 30th of October 1833.

4. The court erred in not allowing the defendants to withdraw their demurrer for the purpose of rejoining that the release was a fair and valid release, without fraud, &c.

*Franklin,* for plaintiff in error.
*Parke,* contra, whom the court declined to hear.

The opinion of the Court was delivered by

GIBSON, C. J.—The defendants having pleaded a release to the plaintiff's declaration for a legacy and the plaintiff having replied *per fraudem,* the defendants rejoin that the release was exhibited by them in the orphan's court, and allowed by that court as a decisive bar to exceptions taken by the plaintiff to their administration account ; and the question raised by the demurrer is, whether the validity of the release has passed *in rem judicatam.* The law of the

[Hibshman v. Dulleban.]

case, with its distinctions, has been compressed into the dimensions of a nutshell, by Chief Justice De Grey, in the Duchess of Kingston's case, 11 *St. Tr.* 261 ; and though the passage is a trite one, yet as it could not otherwise be so well expressed, it is proper to repeat it in his own words. "From the variety of cases in respect to judgments being given in evidence," said the chief justice, "these two distinctions seem to follow as being generally true : first, that the judgment of a court of *concurrent* jurisdiction *directly* upon the point, is, as a plea, a bar—or as evidence, conclusive, between the same parties on the same matter *directly* in question in another court ; secondly, that the judgment of a court of *exclusive* jurisdiction directly upon the point, is in like manner conclusive upon the same matter between the same parties coming *incidentally* in question in another court for a different purpose. But neither the judgment of a concurrent or exclusive jurisdiction, is evidence of any matter INCIDENTALLY cognizable, nor of any matter to be inferred by argument from the judgment." This brief but comprehensive summary furnishes a rule for every case that any complication of circumstances can produce. Now, did the question of fraud come before the orphan's court directly or incidentally ? Not directly certainly; for that court had jurisdiction of it but incidentally, and not to entertain an action whose immediate object should be to ascertain the fact. In Blackham's case, 1 *Salk.* 290, the defendant proved that the goods, for the conversion of which the action was brought, had belonged to Mrs Blackham, whose administrator he then was; to rebut which, the plaintiff proved that he was her husband ; whereupon the defendant contended that the marriage was conclusively negatived by the grant of administration to himself, in preference to the plaintiff, her pretended husband. But lord Holt said, that though a matter directly determined by the sentence could not be gainsaid, yet that the principle has regard but to a point directly tried, and not to a matter collaterally inferable from it. The same principle was recognized by the king's bench, in Clues *v.* Bathurst, *Ca. Temp. Hardw.* 12. The case of Rex *v.* Vincent, *Stra.* 481, in which it was held, that the production of a probate by a prisoner indicted for forging a will, is conclusive for him, has been repeatedly overruled. And the judgment must not only have been direct, but conclusive of the matter adjudged, in the court where it was rendered; for, as is justly remarked by Mr *Starkie*, part two, section sixty-five, if it did not decide the point there, it ought not to decide it elsewhere. On all these grounds the decree of the orphan's court was incompetent to affect the plaintiff in his common law action. The validity of the release was drawn into contest incidentally ; and the point being thus incidentally decided against him, can no more prejudice his title in another court, than can the decision of a surrogate or register prejudice the title of an unsuccessful claimant of administration to the estate of a decedent. Again, the point was not actually, or at least necessarily, decided. The plaintiff's exceptions to the

administration account, were also the exceptions of Henry Dulleban's trustees; and whether the release were good or bad, was a question whose decision could not supplant a decision of them on the merits. It did not supplant it; and the gratuitous determination of a point involving the question of fraud, which had no effect there, ought to have no effect here, especially to deprive the plaintiff of a trial by jury.

Judgment affirmed.