Haynes, J.
This action is brought into this court by appeal from the common pleas. The case was at first submitted to us upon a motion for judgment upon the pleadings in favor of the plaintiff; and later, upon suggestion of the court, was submitted to us with the record of the former case. The pleadings disclose that the action was brought by the Miehle Printing Press and Manufacturing Company against the Andrews-Jones Printing Company to enforce a mortgage lien upon a certain printing press which before that time had been sold by the Miehle Company to the Andrews-Jones Company,and a decree was taken in the court of com *159 mon pleas to enforce their lien upon the property and their right to have the property sold, but the court declined to cause an order of sale to be issued until Dennis Coghlin should be brought in, who, it was said, had some claim upon the property, and thereupon Mr. Coghlin was brought into court under process and filed a pleading in the case, and his answer in this case, in substance,is that in a case before that time pending, (being No. 41017), in the court of common pleas, wherein the First National Bank of Toledo was plaintiff and the Andrews-Jones Company and others were defendants, it was adjudged that this property belonged to him, under and by virtue of certain mortgages and certain proceedings taken thereunder and certain actions of the Andrews-Jones Printing Company in pledging said property to. him, and that said adjudication is a bar to this action. The contest here is, whether the judgment which was rendered in the case of the First National Bank against the Andrews-Jones Printing Company is a bar totheproseeution of this suit as against Mr. Coghlin.
In the case of the First National Bank v. The Andrews-Jones Printing Company, the bank filed a petition in which it set forth that it was a creditor of the Andrews-Jones Printing Company, setting up its claim, and then sets forth that the defendant became unable to pay its obligations, not having sufficient assets to pay the same, and was and is wholly insolvent; that being so, on the 9th of April, 1897, they on that day transferred and conveyed to the defendant, Dennis Coghlin their entire stock of personal property and assets, including machinery, stock in trade and fixtures, etc., and that said Dennis Coghlin thereupon entered into and is now in possession of said property. It stated that Coghlin claims this property upon mortgages which amount to about the sum of $4,200, but it states and charges the fact to be that a large amount of said indebtedness is not in fact the debt of said corporation, but is in fact the indi *160 vidual debt of certain of the stockholders thereof. Plaintiff is unable to state what portion of said $4,200 is of the character last-named, but is informed and charges that not less than $3,500 of said indebtedness is not in fact the indebtedness of said corporation. It further stated that the' possession so taken by said Dennis Coghlin of said stock of goods and property of said corporation was taken under and by virtue of the terms of a certain chattel mortgage executed to said Dennis Coghlin more than one year prior to' said April 9th, 1897, and which was executed by said corporation or by a certain co-partnership which was the predecessor of said corporation in said business. That said chattel mortgage was never recorded,but was withheld from' the records by said Dennis Coghlin at the request of said corporation for the purpose of keeping its credit good. That the indebtedness so as aforesaid due this plaintiff was contracted without any knowledge on the part of the plaintiff herein of the existence of said mortgage. It further says that the unsecured indebtedness of said company will amount to about the sum of nine or ten thousand dollars, and claims'that the value of the property so taken possession of depends largely upon the continuance of the business of said company, and that if the court will appoint a receiver to take charge of the business, the plaintiff believes that a large sum can be realized for the benefit of general creditors and without injury to the rights of Coghlin, and then closes by saying:
“Plaintiff alleges and charges that by reason of the facts herein set forth, the said property and assets of said corporation so held by said defendant Dennis Coghlin, constitute a trust fund for the equal benefit of all the bona fide creditors of said corporation who shall seek to avail themselves hereof in accordance with law. Plaintiff therefore prays that the court will appoint a receiver to take charge of the property and assets of the said the Andrews-Jones Printing Company, to carry on the *161 business of said company under the order of the court, until such time as the same can be sold for the benefit of alL' the creditors of the said company.”
He asks that an accounting may be had of, the amoun-i due Coghlin from said company, and his said mortgage set. aside and held for naught, and that said property and assets- and the good will may be ordered' and decreed to be sold in-such manner as to the court shall seem best for the interests-of all concerned, and the proceeds applied to the payment* of all the debts of the said Andrews-Jones Printing Company, and for such other relief as to the court shall seem, equitable and proper in the premises.
Upon the filing of that petition 'a notice was pub* lished to all the creditors of the existence of the suit and' of the substance of the prayer of the petition,and they were* notified to come in, as provided in section 6344, of the Revised Statutes, and certain creditors did come in and filedi answers and cross-petitions in which they set up the samb facts or availed themselves of the facts set up in the plaintiff’s petition — adopting those facts and praying for the same relief. Among others, the Miehle Printing Press-Company filed an answer and cross-petition in which it affirmed the facts set up in the petition of the plaintiff and asked for the same relief, and at the same time set up that it had a mortgage upon a certain printing press included in-the property for the purchase money, which mortgage had been executed and filed in the records of Lucas county, but it asked for no relief whatever upon that mortgage; it simply set up the fact that it was a creditor, and asked if the-prayer of the petition was granted that its rights in the-printing press should be protected.
Coghlin filed an answer in which he. set up the fact that he had loaned to Samuel Andrews, who originally carried* on the printing business in company with James B. Busse-, the sum of $3,500, to enable him to buy out his -co-parts *162 ner; which he proceeded to do, and that thereafter John Paul Jones entered into a partnership with Andrews; that ‘they carried on the business a little while,and then the firm was incorporated as the Andrews & Jones Printing Com-pany “for the express purpose of owning 'and continuing •said business, at the same place, as a corporation, and not as a co-partnership, and said Andrews & Jones thereupon 'transferred and delivered all of the property and assets of •said partnership to such corporation, on condition that said •corporation was to and did assume and agree to pay all the •debts of said partnership growing out of and in connection with their said business, and including said debt to this defendant. ’ ’
He then set up that at the maturity of the original noto •evidencing the $3,500 loan, there was an extension of the time of payment thereof, and two notes were given, for $1,750.00 each, running two and three years at six per cent. That on June 22, 1896, at the request of said Andrews & Jones, he loaned to said Andrews & Jones Printing •CompanyJ;he further sum of $750 “for which said company executed and delivered to him its note of that date, payable on demand with interest”, and also executed to him a certain chattel mortgage on certain property, describing it; ' then he seta up that this mortgage has not been paid, and “that there was a provision for his taking possession of said property if he desired to do so; and farther sets up that at the time of the delivery of said mortgage the corporation was solvent and that “it continued in good faith to carry •on its business in the usual way and to pursue all the purposes of its organization until April 7th; 1897. He then avers:
“That on said April 7th, 1897, no part of the principal -of either of said notes having been paid, and the interest not having been paid on said notes dated October 5fh, 1895, •■since —-—■—-—or on said note dated June 22, 1896, *163 -■since — and the said defendant deeming it necessary for his more complete and perfect security, that he should take possession of said mortgaged property, demanded of •said the Andrews & Jones Printing Company the possession of said goods and chattels, and the same were by said company delivered to him to be managed and disposed of according to the terms and conditions of the said mortgage, and on demand of said defendant, the said . company also voluntarily delivered to this defendant all the other goods and chattels which said company then owned, consisting of other printing machines and appliances, and of a stuck of merchandize then on hand, and also assigned and transferred to him all amounts due and to become due it from all persons and parties, as the same should appear upon the books of said company, to be held as additional security for the payment of said indebtedness, and to be disposed of in ■the same manner as the property described in and conveyed by said mortgage. And said defendant had said goods and chattels and other property in his possession until the same were, on April, 1897, delivered over to the receiver appointed by this court, in this action, to take possession of such property.
Included with the other printing machines was this Miehle Printing Machine, which was not in at the time the mortgage was taken by Coghlin from the Andrews & Jones Printing Company, but it was-purchased subsequently, and was transferred at this time to Coghlin to secure indebtedness then past due and unpaid. Then, in Coghlin’s answer, follows a denial that said property so taken by him constituted a trust fund for the equal benefit of the creditors of said corporation. He makes no prayer for action, ■so far as he is concerned. The case went to trial upon these pleadings as between the plaintiff and Coghlin. ’ A replication was, however, filed by the First National Bank as against the Miehle Printing Company, wherein it is stated that the mortgage mentioned in their answer and cioss-peti■tion had not been sworn to as provided by the statute.
There was also, at or about the time the'suit was com *164 menced, a receiver appointed, who took possession of this-property and held possession of it at the time trial was had. That case was appealed to the circuit court, and by an arrangement between the parties, a judgment was entered,, which is as follows:
“This cause came on for hearing upon the petition of the-plaintiff, the cross-petition of the Northern National Bank, Toledo, Ohio, and the answer of the defendant, Dennis Ooghlin, and reply thereto, and was submitted to the court,, and the court having heard the evidence and the argument of counsel, and being fully advised in the premises, do find upon the issues joined by said pleadings, for said defendant, Dennis Ooghlin, and that at the time of the commencement of this action said Ooghlin was, as against the creditors of the defendant the Andrews-Jones Printing Company, entitled to the possessiomof all the property referred to in said pleadings as security for the payment of the indebtedness due him from said the Andrews-Jones Printing Company as set out in his said answer, and that said Ooghlin is-now entitled to have said property sold by the receiver heretofore appointed in this action and now having the same in his possession, and the proceeds applied in payment, first, of the costs of this suit, and next, of the said indebtedness to him, It is therefore ordered, adjudged and «decreed that said petition herein be dismissed * * * and-the cause remanded to the court of common pleas,” etc.
It will be observed that this sets up that the case came on for hearing upon the petition of the plaintiff and the cross-petition of the Northern National Bank, Toledo, Ohio,, there being some question made whether the other defendants had appeared or were in this court. The judgment of the court of common pleas was as follows:
“This day came the parties by their attorneys, and thereupon this cause came on to be heard upon the pleadings and evidence, and was argued by counsel, And the court,, being now fully advised in the premises, finds in favor of' said defendant Dennis Ooghlin, on- the issues joined between him and said plaintiff and the other answering defendants herein,
*165 Wherefore it is ordered that said petition of said plaintiff and the cross-petitions of The Northern National Bank of Toledo, The Miehle Printing Press & Manufacturing Company, and The Diem & Wing Paper Company, be and the same are Jjereby dismissed, and that said defendant Dennis •Coghlin, recover of said parties his costs herein, taxed at $--.
And thereupon came said plaintiff, and said answering defendants, The Northern National Bank, The Miehle Printing Press & Manufacturing Company and The Diem & Wing Paper Company, and gave notice severally of their intention to appeal this cause to the circuit court within and for the-county of Lucas aforesaid” etc.
It is claimed now that upon the hearing of that case, and from the record as I have stated it, that the issues which -were made in the subsequent case were substantially disposed of, and that that action was a bar to the subsequent proceedings; and it is claimed also that if they were not disposed of by the issues which were actually made and •submitted to the court, that they were disposed of because the parties might have pleaded or might have given evh dence upon the other issues which have subsequently been made, and that brings us to a discussion of the law that bas been submitted as to what matters and how far the judgment covers the issues here submittted.
Now one of the first cases in the Ohio State Reports which I know of, is that found in 10 Ohio St., at page 4.5, where the court say:
“Where a judgment or decree is relied on by way of evidence, as conclusive per se, between the parties in a subsequent suit, it must appear by the record of the former suit that the particular controversy sought to be precluded was therein necessarily tried and determined.
The opinion was delivered by Judge Peck, and is very full and learned, as his decisions usually were. He says:
“There can be no doubt at the present day but that the rule established in the Dutchess of Kingston’s case, 11 *166 State Trials, 291, cited with approbation by Chief Justice Gibson, in Hibbsham v. Dulleham, 4 Watts, 191, and by Lewis, J., in Lents v. Wallace, 17 Penn. 412, is the true one and well expressed: “The judgment of a court of concurrent jurisdiction, directly upon the point,is, as a plea in bar or as evidence, conclusive between the same-parties, on the same matter, directly in question in another court. But neither tbe judgment of a court of concurrent or of exclusive jurisdiction is evidence of any matter incidentally cognizable, nor of any matter to be inferred by/ argument from the judgment.”
So it is also said in 3 Phillips’ Evidence, 845:
“That where a judgment (or decree) is relied on ty way of evidence as something conclusive per se, between the parties, it must appear by the record of the prior suit, that the particular controversy so sought to be precluded was there necessarily tried and determined. In other words, if, in such case, the former record clearly shows that the judgment to which this effect is ascribed could not have passed without deciding a particular matter, it will be considered as having settled that matter for all future actions; but otherwise not.”
Passing now over Vols. 27 and 28 (Ohio St.) which were cited, I turn to 36 Ohio St., 471, Porter v. Wagner. The second of the syllabi is as follows:
“Where a judgment between the parties is relied upon as-an estoppel, the question is not what the court might have-decided in the former action, but what it did in fact decide, as shown by the judgment.”
“A judgment is conclusive by way of estoppel only as to facts, without the proof or the admission of which it could not have been rendered,”
And the opinion follows that line.
The next I cite is 46 Ohio St., 483. This was a suit under the statute for damages, and the question was whether or not there had been damages allowed for the building of a fence in certain appropriation proceedings. I will read from the opinion:
*167 “The prayer was that the lands ‘may be duly appropriated for the use and purpose aforesaid, and that such proceedings may be had in the premises as may be necessary to perfect the same according to the statute in such case made and provided. ’ No answer or other pleading was required, and none was filed, and the subject of fencing is nowhere mentioned in the record. The verdict was for a gross sum as damages by reason of the appropriation.
“If it may be inferred from the record that the matter of damages by reason of a necessity on the part of the land owner to construct and maintain a fence between his land and that of the company was necessarily determined in the proceeding; or, if the matter of fence, as an element of damage, was necessarily involved in the proceeding, as shown by the record, then the contention of the plaintiff in error is correct. No duty would devolve upon the company by reason of the statute, to maintain a fence, and the court erred in refusing the instruction asked. But, if the question of fencing might or might not have been involved in the case, then, the record being silent on that subject, no such presumption would arise. On the contrary, the duty to fence enjoined by the statute of March 23, 1859, (now sec. 3324, Revised Statutes), which provides that every railroad company having the control of a railroad operated in this state, within two years after the passage of the act or after commencing to run cars, shall construct and maintain fences on both sides of its road, would be impressed upon the company, and the instruction was properly - refused. ‘The question is not what the court might have decided in the former action, but what it did in fact decide, as shown by the judgment. A judgment is conclusive by way of estoppel only as to facts, without the proof or admission of which, it could not have been rendered.’
Now, counsel have cited us to the 27 Ohio St., 238, and 28 Ohio St., 597, in which it is claimed that there was a broader rule stated. In the 27th Ohio St., the court say. (p. 237)
“When the facts which constitute the cause of action or *168 defense have been, between the same parties, submitted to the consideration of the court, and passed upon by the court, they can not again be the proper subjects for an action or defense, unless the finding and judgment of the court is opened up or set aside by proper authority. This principle of law extends still further in quieting litigation. A party cannot re-litigate matters which he might have interposed, but failed to do in a prior action between the same parties or their privies, in reference to the same subject-matter. And if one of the parties failed to introduce matters for the consideration of the court that he might have done, he will be presumed to have waived his right' to do so. ”
In the 28 Ohio St., on page 520, the court say:
“It is a well-settled principle in judicial proceedings that when a party is called upon, from the nature of the proceedings, to make good his cause of action or defense, and he purposely or negligently fails to do so at the proper time, he will be held to have waived his rights, whatever they may have been. 27 Ohio St., 233. So we take it, when a party has full knowledge of all the facts that would make for him a valid defense in a given case, a failure to assert them at the proper time, from any cause over which he has control, will work a waiver, and cause him to lose the benefit thereof.”
There is another case in 27 Ohio St. where it is held: (p. 674)
“A judgment on the merits, in favor of all the defendants in such action, is a bar to a subsequent action, by the same plaintiff for the.same cause of action, against one of the defendants in the former action.
“Such judgment is conclusive, not only as to matters thereby actually determined, but also as to every other matter which might have been litigated and decided upon the issues made in the case, and upon which it was tried.
In the 53 Ohio St., 361 (Hixon v. Ogg), there is a case in which there is quite a discussion upon the question by the supreme court. In that case the action had been brought upon a note, and there had been a plea of payment. *169 When the issue was tried there was a judgment for plaintiff. Motion was made for a new trial by defendant, upon the hearing of which he introduced a paper purporting to be a receipt. The plaintiff contended that this had been forged, the court overruled the motion, and the judgment was allowed to stand. The defendant was subsequently indicted for having forged this paper, and on that trial he was acquitted,and thereupon he sued plaintiff _|or malicious prosecution, and one of the questions which arose there was whether in truth and in fact the amount which had been in controversy before had been paid. The court having stated that it had been settled by that litigation, the attorney for the plaintiff in the last case asked the court to charge: “But that judgment is not a Lar to this action, and the question of the payment of said money can be re-tried here for the purpose of this action.” This the court refused to give, and the plaintiff excepted. The supreme court said there were two questions: First. Whether the judgment in the former action was not a bar to the second action; and second: Whether the question of the repayment of the money could be re-tried for the purpose of the second action; and the court held that it could not, and proceed to cite cases, one being from 5 Conn. 550, where it is beW.-;
“Where the cause or object of two actions is different, though the matter or point in dispute is the same Jn both, a prior judgment is no bar to a subsequent action; but fhe verdict may be matter of evidence to prove such point in dispute * * * for although the object and purpose of two actions being different, the judgment in one, cannot be used by way of bar to the other, it does not follow that in the second action, either party can be permitted to contradict what was expressly adjudicated in the first. A decision upon any material point is conclusive, though the subject-matter of the two suits is different. A judgment is conclusive, not only as to the subject-matter in suit, but as to all other suits which, though concerning' other subject-matters, involve the same questions of controAmrsy. ”
*170 They then cite a part of the syllabus in the case of Covington & Cincinnati Bridge Co. v. Sargent, 27 Ohio St., as follows:
“In a judicial proceeding in a court of record, where a party is called upon to make good his cause of action or establish his defense, he must do so by all the proper means within his control, and if he fails in that respect, purposely or negligently, he will not afterward be permitted to deny the correctness of the determination, nor to litigate the same matter between the same parties.”
He then cites a case of Cromwell v. County of Sac., 94 U. S., 351:
/‘The difference between the effect of a judgment as a bar to a second action on the same demand, and its effect as an estoppel between the same parties upon a different cause of action, is clearly stated in the first clause of the syllabus: ‘In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action, * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.”
In 54 Ohio St., at page 562, is another case. In this case there had been a suit brought to enforce a stockholder's lien, and it was found that Drexel, Morgan & Co. were the owners of a certain lot of stock. After the issues were made up and the cause tried in the common pleas, it was taken by appeal to the circuit court, was there upon certain issues heard, and came up in the circuit court again, in a form whereby the former judgment was pleaded as a bar to the subsequent proceedings. The court in passing upon this question, say:
“One contention of counsel for the defendants in error is, that the first four of the grounds of reversal above stated were involved in, and determined adversely to the plaintiff in error by, the former judgment of the circuit corurt,which *171 having been affirmed by this court, became a final adjudication upon them, and as between the parties, precludes further inquiry..
Then it proceeds to state some other facts, after which it comes down to the question of law:
“As said by counsel for defendants in error,- every fact necessary to that determination ‘stands as a fact adjudicated between the parties, and, as between them, cannot be re-litigated in any subsequent proceeding in the same action. ’
“Questions before the court for decision, and- by the court decided, as essential to a final judgment, are conclusively and finally adjudicated. The law as declared cannot be changed upon a second or subsequent appeal.
“It has been declared by this court that: ‘When the facts which constitute the cause of action or defense have been between the same parties, submitted to the consideration of .the court, and passed upon by the court, they can not again be the proper subjects for action or defense, unless the finding and judgment of the courtis opened up and set aside by proper authority. This principle of law extends still further in quieting litigation. A party can not re-litigate matters which he might have interposed, but failed to do in a proper action, between the same parties or their privies, in reference to the same subject-matter, And if one of the parties failed to introduce matters for the consideration of the court, that he might have done,, he will be presumed to have waived his right to do so.”
I read these authorities to show that the language of the supreme court is, in different cases, I think somewhat at variance; and there arises perhaps some little confusion in attempting to apply the principles laid down in these various cases to any particular case. We think the doctrine stated in the 10 Ohio State is a correct doctrine, and it has been affirmed by the supreme court from time to time.
In the first case tried — the First National Bank case— the issues which were joined between the parties were, in substance, these: The plaintiff claimed on the facts of the *172 case that Coghlin bad taken from these defendants property at a time when they were insolvent and that he had taken property of the corporation amounting in value to a very large sum of money to secure an indebtedness due from some of the individual stockholders to the corporation. It is true that it did not say in so many words that that was done with intent to hinder, delay or defraud creditors; it simply states that the firm was insolvent and was owing some $10,00.0 of indebtedness, and prays for the appointment of a receiver to take possession of the property, but it files its notice to all creditors to come in as provided in sec. 6344 of the statutes. The facts of the case as set forth are that the party has been misapplying the funds of the corporation to secure the individual indebtedness of the several members of the corporation, and practically has hindered and delayed creditors in the collection of their debts by so doing. It is true, perhaps, that the pleader had in his mind the decision of Rouse v. Bank, decided in 45 Ohio St., and perhaps he thought he might apply this principle to this particular case. Coghlin set up an issue in which he claimed that he received this mortgage from the company when they were solvent; that this indebtedness occurred prior to the time when the corporation was formed, and that when the corporation was formed it assumed the whole of ihe indebtedness, thereby making it the indebtedness of the corporation; that at that time it was a solvent and going corporation, and practically claimed that under the decision of the supreme court he had a right to take security at that time; and on these questions the case went to trial and was heard upon these issues, and the finding was in favor of Coghlin, and the plaintiff’s petition was dismissed. Now, upon any issues as between the Miehle Printing Company and Coghlin, toere was no issue joined - by Coghlin; the only issue joined, if it was joined, was by the replication made bj tbe plaintiff — 'The First National Bank — that the *173 Miehle Printing Company had not'made a proper affidavit to their mortgage which they had filed. Coghlin paid no attention to that matter whatever, and there was no issue joined between them, apd the matter was not directly in the litigation at all, and was not passed unon, by the court, and we think that under the proper rule of law it should be held that that matter as between Coghlin and the Printing Company was not passed upon, and was not in fact a bar. It is true that as between plaintiff and defendant both their petitions were dismissed, but that issue was not submitted to the court: there was no finding as between the parties who had joined issue upon that point as to their respective rights. What the company had said was that it had this mortgage, and prayed that if the prayer of the plaintiff’s petition was allowed and it was found that the mortgages in the possession of Coghlin were illegal and in violation of the statute, that the rights of the plaintiff should be protected. We are of the opinion upon a very full discussion of the case, that the plea in bar should not be allowed. And that leaves the parties in this position, as I understand it: that plaintiff had a chattel morgage upon the property; that that mortgage was not properly verified; it was a good mortgage as between the Miehle Printing Company and The Andrews-Jones Printing Company. Mr. Coghlin had taken possession of this particular press as a pledge, and it was transferred to him by the Andrews-Jones Printing Company as security for an antecedent debt, without any new consideration whatever moving between the parties. The next question that came up was:
“What were the respective rights as between these parties, under that state of facts?”
We have examined a very large number of authorities, and the conclusion at which we have arrived is that he is not clothed with the rights of a bona fide purchaser under sections 4150 and 4154 of the statute. Other leading cases *174 that we have examined are: 27 Law Bulletin, p. 72; which is a decision of the court of common pleas of Hamilton county, and is authority simply so far as it is a well reasoned case; 7 Ohio St., 199; 6 Ohio St., 148, The 7 Ohio St. is as to the effect of notice upon a prior mortgage. The 6 Ohio St. relates to the rights of a party who takes a promissory note either as security upon an antecedent debt.
Iu 19 Ohio SI. is a case which comes very near this, and is a case that is by implication a decision upon this case; it is found at page 145. In that case there had been a lease of certain premises to a firm with an agreement in the lease that the property which was in the store should be security for the rent. Subsequently a mortgage was made by the tenants to a party upon part of the stock of goods to secure a debt of $1000, and on the same day the mortgage was duly filed as required by the statute; and subsequently possession was taken of the property. After that an agreement was made whereby the lessors took possession of the property and held it for a while, and then I think a petition was filed and the property brought under the jurisdiction of the court, and by agreement, the property was sold, and upon question of priority of liens the case was taken to the supreme court, In this case the question was whether or not these persons taking the mortgage for $1000 had a lien upon this property prior to the equities of the plaintiffs by virtue of their alleged agreement. The court say:
“If the question of priority between the parties stood upon their equitable rights alone, and Mrs. Heiny’s equity was obtained only as a security of a pre-existing debt, without any other obligation, or consideration, between the parties at the time her mortgage was made — upon the principle applicable to the voluntary transfer of negotiable paper before due, as security of a pre-existing debt, as settled in the case of Roxborough v. Messick (6 Ohio St., 448), it might well be doubted whether the want of notice would be of any avail to the subsequent mortgagee.
*175 The question was decided for the mortgagee, upon the ground that a note was given and' the payment extended one day, and the court held that constituted a new consideration. But the general rule is stated in regard to mortgages. Cases may be found in 27 N. Y. 581 and 77 N. Y. 6288, in which the rule of law is stated as stated above, to-wit: that where the mortgage is taken to secure a preexisting debt, the mortgagee acquires no rights to the exclusion of a prior equity. It is stated in 7 Ohio St. that the mortgage law of this state was copied from that of the state of New York, and the supreme court in that case followed the decision of the supreme court of New York in the construction of the statute of this state. There is also another case which is instructive, in 34 Michigan, 360, in which Judge Campbell says:
“The statute which makes a mortgage of chattels, which has not been recorded, void against subsequent purchasers or mortgagees in good faith” (citing from their statute) “uses those terms in the sense which has always, been attached to them by judicial decisions. The only object of the law is to protect those who have acquired rights under circumstances which would render them liable to be defrauded unless protected against instruments of which they knew nothing when they obtained their rights. It has always been held that a purchaser who had paid nothing could not be thus defrauded, and that no one could be protected as a bona fide purchaser except to the extent of his payments made before he received such notice as should have prevented him from making further payments. This doctrine has been too uniformly recognized to require discussion or citation of authorities.”
That question arose upon a chattel mortgage as against a lien acquired by purchase of the property.
I have not time to go through all these authorities. We are of opinion that as between these plaintiffs that the equity of the Miehle Printing Press Company prevails over that of Coghlin.
Blackford & Byal, and Swayne, Hayes & Tyler, for Plaintiff,
Waite & Snyder, and Doyle & Lewis, for Defendants,
It was argued here that inasmuch as a receiver had been appointed, it was in the nature of an execution in equity. There was something about the petition that looked as if the pleader had undertaken to file a petition under the case of Rouse v. The Bank, under the claim that the firm being insolvent, the receiver should have been appointed to sell the property and make payment to all the creditors pro rata. A receiver was appointed, but upon the dismissal of the petition we have no doubt that all the rights of the receiver, so far as that case was concerned, were ended — that his duties closed; there was nothing left for him to do but to turn the property over to Coghlin. He had been appointed at the instance of the parties plaintiff for the purpose of preserving the fund for the benefit of the general creditors, whether under the case that arose against the bank or under section 6344, it made no difference; he was to preserve that fund for the benefit of all creditors, and when the petition was dismissed, his rights ceased. Under these circumstances, a judgment having been already rendered in favor of the plaintiffs, so far as Andrews & Jones are concerned, it simply remains to render judgment in favor of the Miehle Printing Company as against Coghlin, that they have a prior claim against this property.