# Campbell *versus* Stephens.

1. Stephens died seised of land, Thomas, one of his sons and heirs, having been long absent and unheard of; the others assuming his death, sold the land, the vendee sold to Campbell, who to extinguish the title of Thomas instituted proceedings in partition, took the land at the appraisement and entered into recognisance to Thomas. In a suit on the recognisance, *Held*, that Campbell was estopped from setting up that Thomas was dead when it was given.

2. Campbell paid all the purchase-money to his vendor, except the amount of the recognisance to Thomas; the suit on the recognisance was in the name of Thomas to the use of Campbell's vendor. The court charged that the person designated in it need have no interest in the fund as the money is to be paid under the order of the court, the recognisance may be moulded as the court may decree. *Held* not to be error.

October 28th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Armstrong county*: No. 70, to October and November Term 1870.

This was a scire facias sur recognisance in the Orphans' Court,

by Thomas Stephens, to the use of Peter Byers, against James Campbell, John Mortland, B. Wilt and William Colwell.

Under proceedings in partition in the Orphans' Court, the real estate of Ephraim Stephens, who had died in 1837, was, on the 5th of September 1859, decreed to James Campbell and John Mortland, alienees of Peter Byers, the alienee of Robert Stephens, who had purchased the interest of all the heirs of the decedent, except a son, Thomas Stephens. On the same day Campbell and Mortland, with the other two defendants as their sureties, entered into a recognisance to Thomas Stephens, in the sum of $251.53, conditioned for the payment to Thomas of $125.76 in one year, with interest, and the further sum of $62.88 on the death of the widow of the decedent.

After Byers became owner of the land he sold to Campbell, securing $2738.40, part of the purchase-money, in three annual payments, by a judgment-bond, dated March 27th 1857. To show this part of the transaction between Campbell and Byers, the plaintiff gave in evidence, under objection and exception, deed August 14th 1837, E. Stephens's heirs to Robert Stephens; deed February 12th 1840, R. Stephens to Peter Byers; deed February 13th 1857, Byers to Campbell; also the record of the entry of judgment on the bond, execution issued on it and entry on the record, of the payment, July 11th 1861, of the balance in full. He also gave in evidence a statement made at the time the parties settled, showing that from the balance due on the bond there had been deducted this recognisance, as being a lien on the land and still payable to Thomas. Thomas had been absent and unheard of for a long time before his father's death; Byers, his predecessor, Robert Stephens, and Campbell, his alienee, had held adverse possession of the land for much more than twenty-one years. Campbell refused to pay the whole of the purchase-money on account of the recognisance, and Byers claiming that he had owned and conveyed to Campbell the interest of Thomas in the land, brought this scire facias in the name of Thomas to his own use, that he might thus secure the balance of the purchase-money due him, under his contract with Campbell.

The case being given in detail in the opinion of Judge Williams, no further statement is necessary.

The defendants' points and the answers were:—

" 1. The evidence of the defendants in this case is amply sufficient to raise a presumption in law of the death of Thomas Stephens before this suit commenced, and no sufficient evidence on the part of the plaintiff having been given to rebut such presumption, the plaintiff cannot recover, and the verdict must be for the defendant."

Answer: " Perhaps, under ordinary circumstances, where suit was brought between creditor and debtor, this point would be

answered in the affirmative. But the defendants themselves having given this recognisance under the decree of the court, and at their own suggestion and insinuation to the court, it is not now competent for them to dispute it. Furthermore, the person designated in the recognisance need have no interest in the fund; and as the money is to be paid under the order and decree of the court, the recognisance may be moulded as the court may decree or recognise. The point is therefore answered in the negative so far as this case is concerned."

" 3. Under the whole evidence in this case, the verdict must be for the defendants."

Answer : " This point is answered in the negative."

The verdict was for the plaintiff for $303.15.

The defendants took a writ of error.

They assigned for error the answers to the points and the admission of the evidence excepted to.

*D. Barclay* (with whom was *B. Nulton*), for plaintiff in error.

*J. Boggs* (with whom was *W. F. Johnston*), for defendant in error.

The opinion of the court was delivered, January 3d 1871, by

WILLIAMS, J.—This case is novel in some of its aspects. Ephraim Stephens moved to Franklin township, Armstrong county, in 1826, and died seised of a tract of land in said township, containing about 178 acres, sometime before the year 1837, leaving a widow and nine children surviving. He had another son, Thomas, who was never heard from after the family moved to Franklin. By his will, which was defectively executed, he devised the land to his son Robert, to whom his brothers and sisters, in order to carry "into full effect the wishes of their deceased father," conveyed it by deed, bearing date the 14th of August 1837. In this deed the parties are recited as "being the only heirs and legal representatives" of Ephraim Stephens, deceased. Robert Stephens, by deed, dated the 12th of February 1840, conveyed the land to Peter Byers, who sold it by articles of agreement, bearing date the 13th of February 1857, to James Campbell, one of the defendants below, for the consideration of $3458.40, payable in annual instalments—the last of which was payable on the 1st of April 1860—at which time Byers covenanted to make Campbell a good and indisputable title. It appears that Campbell objected to the payment of the whole purchase-money, unless some proceedings were had to divest the possible outstanding title in Thomas Stephens; and, for this purpose, he and Byers presented a petition to the Orphans' Court of Armstrong county, setting forth that Ephraim Stephens died in-

[Campbell v. Stephens.]

testate, leaving surviving him a widow then residing in the state of Iowa, and ten children, to wit: William, James, *et al.*, of all of whom the said petitioners are alienees, and Thomas Stephens whose residence is unknown, and it is also unknown to your petitioners whether he is alive or dead; and, after describing the land of which the intestate died seised, they prayed the court to award an inquest to make partition of the premises, &c.

A writ of partition or valuation was thereupon issued, in pursuance of which the land was appraised, and, on the 5th of September 1859, taken by Campbell at the appraisement made by the inquest. On the same day, he and his co-defendants entered into a recognisance by which they became bound unto Thomas Stephens in the sum of $251.53, conditioned for the payment of $125.76 within twelve months of the date thereof, and the further sum of $62.88 on the death of the widow. She died in 1861, and the scire facias on the recognisance was issued in this case, in 1867, in the name of Thomas Stephens, as plaintiff, for the use of Peter Byers against the plaintiffs in error, the defendants below. On the trial the defendants gave evidence of the declarations of Ephraim Stephens that his son, Thomas, went away before he moved to Armstrong county; and that he had not been heard from for over forty years; and requested the court to charge the jury that the evidence of the defendants in this case is amply sufficient to raise a presumption in law of the death of Thomas Stephens before this suit commenced, and no sufficient evidence on the part of the plaintiff having been given to rebut such presumption, the plaintiff cannot recover and the verdict must be for the defendant. The court answered this point as follows: "Perhaps under ordinary circumstances, where suit was brought between creditor and debtor, this point would be answered in the affirmative. But the defendants themselves having given this recognisance, under the decree of the court, and at their own suggestion and insinuation to the court, it is not now competent for them to dispute it. Furthermore, the person designated in the recognisance need have no interest in the fund, and as the money is to be paid under the order and decree of the court, the recognisance may be moulded as the court may decree or recognise. The point is therefore answered in the negative, so far as this case is concerned." We are of the opinion, under the facts of the case, that the court rightly refused to affirm the defendants' point. There was no evidence that Thomas Stephens was living at the time the defendants entered into the recognisance, and the legal presumption, arising from the evidence, is that he had been for a long time dead. When Campbell instituted the proceedings in partition he knew, as the petition shows, that Thomas Stephens had not been heard from for years, and he instituted the proceedings for the purpose of protecting himself against the claim he

[Campbell *v.* Stephens.]

might have in the improbable event of his being alive. Though dead in legal presumption, the defendant elected to treat him as still living, in order that he might acquire whatever semblance of title he had by the proceedings in partition; and he became bound in the recognisance with his co-defendants, as sureties, in order that he might extinguish any possible title that he might have, and acquire it for himself. He was permitted by Byers to retain the amount of the recognisance out of the purchase-money in order that he might pay it to Thomas, in satisfaction of the recognisance, if living. The whole proceeding was a contrivance of the parties for the purpose of giving Campbell " a good and indisputable title" to the land, and protecting him from loss in any event; and it has answered its purpose. Under the deed from Byers, and the proceedings in partition, he has an unquestionable title to the land, whether Thomas is living or dead; and if it were not so, he has a good and valid title under the Statute of Limitations by an uninterrupted adverse possession of the land by himself and Byers for a period of more than twenty-one years. What right or equity then has he to retain longer the purchase-money and refuse to apply it in satisfaction of the recognisance? He has been permitted to retain it as long as there was any possible apprehension of a claim to it on the part of Thomas. But now that it is certain that he never had any claim to it, he seeks to hold both the land and the money; and he sets up as a defence to the action the legal presumption that Thomas was dead when the recognisance was given, and being dead, that no action can be maintained on it in his name. But as he elected to treat Thomas as living when he instituted the proceedings in partition and gave the recognisance, the law will hold him to the fiction, and treat Thomas as still living, for the purposes of this action, in order to compel the defendant to pay what he justly owes. Under the facts of this case he is estopped in equity from setting up the legal presumption of Thomas's death as a defence to the action, and the court below rightly refused to permit him to do it.

There is nothing in any of the other assignments of error that requires to be noticed. The evidence complained of was properly admitted, as it tended to show the real nature and purpose of the proceedings, and the relations of the parties to each other in the transaction.

                                        Judgment affirmed.