# Moser *v.* Philadelphia, Harrisburg & Pittsburg Railroad Company, Appellant.

*Railroads—Sidings—Right to construct siding—Ownership of mills and manufactories—Discrimination—Lease.*

1. The right to siding connection with a railroad as a specific privilege is purely statutory. It is not incident to adjoining ownership, but to the ownership of mills and manufactories in the vicinity of the railroad; and the right is given whenever such ownership has associated with it the right, however acquired, whether through ownership of all the land between mill or manufactory and the railroad, or by privilege, through grant, license or otherwise of an intervening owner, to construct a siding from the mill or manufactory up to the line of the railroad.

2. Where a railroad company leases its railroad to another railroad company, and thereafter a neighboring owner of land on which are quarries and lime kilns acquires by purchase other land lying between her land and the railroad right of way, she acquires the right to a siding at the time of the purchase of such other land, and if a siding is refused

her, and such refusal involves an illegal discrimination against her, her right of action for the wrong sustained is against the lessee company, and she cannot maintain a suit therefor against the lessor company.

*Railroads—Lease—Recognition of validity of lease—Estoppel of record—Equity.*

3. Where an owner of land files a bill in equity against two railroad companies to compel the construction of a siding, and it appears that one of the defendant companies was the lessee of the other as to the line of railroad in question, and the suit involves an assertion by the complainant of the validity of the lease, the latter cannot in a subsequent action for damages against the lessor company for wrongful discrimination in refusing the siding, be heard to deny the validity of the lease. She is estopped of record by a previous equity suit.

*Res adjudicata—Estoppel—Equity—Railroad.*

4. The judgment of a court of concurrent jurisdiction directly upon the point is, as a plea, a bar; or as evidence, conclusive between the same parties on the same matter directly in question in another court. But neither the judgment of a court of concurrent or exclusive jurisdiction, is evidence of any matter incidentally cognizable nor of any matter to be inferred by argument from the judgment.

5. Where on a bill in equity against two railroad companies one of which was the lessor of the other, to compel the construction of a siding and for damages, the court refuses to allow damages, but enters a decree against both companies directing the construction of a siding, a finding by the court that demands had been made by the complainant upon the defendants for two years prior to the suit, for the construction of the siding is merely incidental to the question of damages, has no relevancy to the decree, and is not conclusive, in a subsequent suit at law against the lessor company for damages for unlawful discrimination of the fact that a demand had been made by the plaintiff against the lessor company for the construction of a siding two years before the filing of the bill; and the record of the equity suit is not evidence in the action for damages that such demand had been made.

*Railroads—Sidings—Unlawful discrimination—Lease—Act of June 4, 1883, P. L. 72.*

6. In an action against a railroad company under the Act of June 4, 1883, P. L. 72, to recover damages for unlawful discrimination in the matter of a siding, it appeared that the defendant was the lessor of another company, and that the lessee company had offered to put in the siding for the plaintiff for the sum of $400. Subsequently to this offer the plaintiff filed a bill in equity both against the lessor and the lessee companies to compel the construction of a siding and secured a

decree to that effect. Thereafter the siding was built by the lessee in compliance with the decree at the expense of the plaintiff. The lessor had nothing to do with the construction of the siding. There was no evidence in the action at law for damages that any demand had been made by the plaintiff on the lessor company for the construction of the siding. *Held*, that plaintiff had no right of action against the lessor for any amount whatever.

Mr. Justice Mestrezat dissents.

Argued April 25, 1911. Appeal, No. 260, Jan. T., 1910, by defendant, from judgment of C. P. Cumberland Co., Sept. T., 1908, No. 177, on verdict for plaintiff in case of Margaret Moser v. Philadelphia, Harrisburg & Pittsburg Railroad Company. Before Fell, C. J., Brown, Mestrezat, Elkin, Stewart and Moschzisker, JJ. Reversed.

Trespass to recover damages for an alleged discrimination in the matter of siding facilities. Before Sadler, P. J.

From the record it appeared that on October 15, 1890, the defendant, the Philadelphia, Harrisburg & Pittsburg Railroad Company, leased its railroad extending from Harrisburg to Shippensburg to the Philadelphia & Reading Railway Company for the term of 999 years, and "also agreed to lease to the said lessee all railroads hereafter by it acquired." The lessee thereafter operated the road. On April 17, 1905, the plaintiff, Margaret Moser, was the owner of a tract of land containing deposits of limestone with opened quarries and kilns built for the manufacturing of lime. On the date mentioned Miss Moser purchased a tract of land between the limestone land and the railroad right of way. In 1906, the plaintiff filed a bill in equity both against the lessee and the lessor railroads to compel the construction of a siding, and a decree was entered in her favor directing the defendants to build the siding demanded. The bill also claimed damages under the Act of June 4, 1883, P. L. 72, but the court declined to award damages. In 1908, the present action was brought against the lessor company alone to recover damages for an alleged unreasonable discrimination. The evidence also showed that a siding was constructed for the defendant by the lessee company in 1908 and that the plaintiff voluntarily paid therefor the sum of $969.08. This siding was built in May, 1908, and paid for on June 5, 1908.

The defendant presented the following points:

2. The evidence in this case failed to show that any application was ever made by the plaintiff or her agents to the defendant for the installation of a siding in connection with her land. *Answer:* In the light of the record of the bill in equity filed to No. 4, October Term, 1906, and the findings of fact and conclusions of law, and the decree, the point is refused. [1]

4. The defendant is not liable to the plaintiff in this action for or on account of the cause of action set forth in the plaintiff's statement. *Answer:* Refused. [2]

5. The defendant is not liable to the plaintiff in this action for all or any part of the cost of the installation of the siding in connection with her land by the Philadelphia & Reading Railway Company. *Answer:* The siding does not connect land of the plaintiff with the Philadelphia & Reading Railway Company, but with the Philadelphia, Harrisburg & Pittsburg Railroad Company. If the jury find that there was an unlawful discrimination by the defendant, under the evidence, the plaintiff may recover for the additional cost of the siding put in in 1908 and paid for by her, above that which it would have cost to construct a similar one in 1906, when she applied for the same. [3]

6. The evidence in this case shows that all and every application or demand made by the plaintiff for the installation of a siding in connection with her land was made to the Philadelphia & Reading Railway Company, and that the cost of the installation of that portion of the siding on defendant's right of way was paid to the said Philadelphia & Reading Railway Company, and that no portion of the same was paid by her to the defendant company. *Answer:* We say it was immaterial to whom the plaintiff paid the money for the construction of the siding. The question is, how much did she pay; how much did it cost, and was that cost in excess of what it could have been constructed for in 1906? The record in the bill in equity shows that the present defendant was in default in not putting in the siding. [4]

7. The defendant is not liable to the plaintiff in this action for treble damages under the act of June 4, 1883,

for any injury which may have been suffered by her on account of the failure or refusal of the lessee of the defendant railroad to install the siding involved in this case. *Answer:* We leave to the jury to determine whether there was an unlawful discrimination on part of the defendant. If they so find, treble damages may be given. [5]

8. The plaintiff has failed in this case to show by any clear or definite proof the amount of damages, if any, she may have suffered by reason of the noninstallation of a siding in connection with her land as would entitle her to recover treble damages under the act of June 4, 1883. *Answer:* Refused. [6]

9. Any right that the plaintiff may have to the recovery of all or any portion of the cost of the installation of the siding upon the defendant's land, and the connection of the same with that portion of the siding upon her land, must be enforced by a proper application to the court of common pleas of Cumberland county, sitting in equity, in the suit filed to No. 4, October Term, 1906. *Answer:* The greater portion of the damages claimed in this action are for outlays made by the plaintiff, by reason of alleged defaults of the defendant since the bill in equity was disposed of, and a decree entered. This prayer is refused. The right to sue for the other damages was expressly reserved in the equity proceeding. [7]

10. The defendant is not estopped by the record filed to No. 4, October Term, 1906, and offered in evidence, from making a defense to the cause of action set forth in the plaintiff's statement filed in this case. *Answer:* The defendant is not estopped from contesting the amount of damages the plaintiff seeks to recover in this action by reason of the bill filed to No. 4, October Term, 1906, and the decree entered thereon. [8]

12. The suit in equity to No. 4, October Term, 1906, between the plaintiff in the present action and the Philadelphia, Harrisburg & Pittsburg Railroad Company, involved the alleged discrimination in furnishing a private siding to the plaintiff on the Philadelphia, Harrisburg & Pittsburg Railroad Company, a facility under the act of June 4, 1883, for the transportation of property. It is

264 MOSER *v.* PHILA., H. & P. R. R. CO., Appellant.

Points—Arguments.                    [233 Pa.

undisputed that at the date of said suit and decree, the Philadelphia & Reading Railway Company was the lessee of said Philadelphia, Harrisburg & Pittsburg Railroad Company, and under the covenants of said lease, dated October 13, 1890, and duly recorded in the recorder's office at Carlisle, Pa., in Miscellaneous Record Book No. 11, page 270, said lessee undertook to obligate itself to furnish all such facilities. The Philadelphia, Harrisburg & Pittsburg Railroad Company could therefore not be guilty of discriminating against the plaintiff, and this action being against the Philadelphia, Harrisburg & Pittsburg Railroad Company alone, the plaintiff cannot recover. *Answer:* We refuse to hold that under the lease of the Philadelphia, Harrisburg & Pittsburg Railroad Company to the Philadelphia & Reading Railway Company that the former was relieved of its obligations to furnish sidings to shippers, certainly not in view of the decree made in this case on bill filed to No. 4, October Term, 1906. While it may be conceded to be binding between the lessor and the lessee, yet not necessarily as to the public at large. [9]

13. The Act of June 4, 1883, P. L. 72, cannot apply to a lessor under the terms of the lease made between the Philadelphia, Harrisburg & Pittsburg Railroad Company and the Philadelphia & Reading Railway Company. It only can be made to apply to an operating road required under the law to make and furnish due and reasonable charges and facilities in the transportation of property without discrimination. *Answer:* Under the evidence, including the decree under bill in equity filed to No. 4, October Term, 1906, we cannot affirm this point. [10]

14. Under all the evidence in this case the verdict must be for the defendant. *Answer:* Refused. [11]

Verdict and judgment for plaintiff for treble damages amounting to $2,210.28. Defendant appealed.

*Errors assigned* among others were (1–11) above instructions, quoting them.

*Conrad Hambleton*, with him *John W. Wetzel*, for appellant.—The defendant having leased its railroad prior to the cause of action, there can be no recovery against it for an

act of the lessee, in discriminating in the furnishing of rates or facilities: Pinkerton v. Traction Co., 193 Pa. 229; Caruthers v. R. R. Co., 59 Kan. 629.

The character of injuries set up by the plaintiff are not such as are contemplated by the act of 1883: Hoover v. R. R. Co., 156 Pa. 220; Wright v. R. R. Co., 32 Pa. Superior Ct. 5.

There can be no recovery for any part of the cost of siding, except through a reformation of the decree entered to No. 4, October Term, 1906: Head v. Maloney, 111 Pa. 99; Monongahela Nav. Co. v. Wood, 194 Pa. 47; Peebles v. Pittsburg, 101 Pa. 304; De La Cuesta v. Ins. Co., 136 Pa. 62–78, 658, 664.

*Joseph P. McKeehan,* with him *S. B. Sadler,* for appellee.—An adjoining landowner has as such, a special and peculiar right to a railroad siding. In estimating damages for land taken, a railroad takes credit for the benefit conferred incidental to this right. No credit can be taken for benefits incident to rights enjoyed by the public: Moser v. P., H. & P. R. R. Co. et al., 35 Pa. C. C. Rep. 49; Pittsburg & L. E. R. R. Co. v. Robinson, 95 Pa. 426; Reeser v. P. & R. Ry. Co., 215 Pa. 136; 64 Atl. Repr. 376; Olanta Coal M. Co. v. B. C. R. R. Co., 158 Fed. Repr. 36; 85 C. C. A. 148.

When defendant company built its road and took credit for this right, the right became annexed and appurtenant to the adjoining land later acquired by the plaintiff. The right antedated the lease and passed to the plaintiff with the adjoining land. Such obligations, supported by consideration, assumed by the owning company prior to the lease, survive the lease: Chicago & N. W. Ry. Co. v. Crane, 113 U. S. 424; 25 Am. & Eng. Ency. of L. (2d ed.), 784.

No statute authorizes the transfer, by lease or otherwise, of the right to take land and build a railroad. The owner company must pay for its right of way and if, in building its road, it discriminates in constructing permanent shipping facilities, such as sidings, it must answer: Noyes on Inter-corporate Relations, secs. 210, 216, 217; Snyder v. B. & O. R. R. Co., 210 Pa. 500; St. Louis R. R. Co. v. Civil, 28 Kan. 622; 44 L. R. A. 727, note.

The lease does not cover the locus in quo. The land was acquired and the track laid after the lease was made. There is no statutory authority for a lease of track to be built in futuro. To that extent, the lease in evidence is void. When the lease is void, the lessee is deemed the servant of the lessor: Pittsburg & Connellsville R. R. Co. v. R. R., 81* Pa. 104, 112; Lewis v. R. R., 16 Phila. 608; Wood v. R. R., 8 Phila. 94; Van Steuben v. R. R., 178 Pa. 367; 185 Pa. 300.

OPINION BY MR. JUSTICE STEWART, January 2, 1912:

The judgment in this case can be sustained only as it can be made to appear that liability for the injury complained of attached to the defendant company prior to the lease of its road to the operating company. The action was for the recovery of damages for undue and unreasonable discrimination in the matter of furnishing facilities for transportation. The appellee not only admits that the action was based on the statute of June 4, 1883, P. L. 72, which prohibits such discrimination and allows recovery of triple damages for any violation, but insists upon it, in view of the contention made by appellant to the contrary. Without this, it is too apparent for argument that the action was so based, and there can be no question as to the sufficiency of the declaration for that purpose. That appellee was unduly and unreasonably discriminated against by the refusal of siding privileges, which under similar conditions had been allowed to others, is a fact established by the verdict. The governing question, however, remains—Where did legal liability for the injury attach? The defendant had constructed its road long before the plaintiff became an adjoining landowner. Fifteen years before she became such owner the defendant company in the exercise of a statutory right, leased its entire road to the Philadelphia & Reading Railway Company, which latter company has ever since continued to operate it. It is settled law in Pennsylvania that when a railroad company leases its road to another company, the former is exempted from liability for any default or negligence in the operation of the road by the lessee.

Pinkerton v. Pennsylvania Traction Co. et al., 193 Pa. 229. This exemption, of course, does not extend to liabilities incurred by the owning company prior to the lease. Whatever legal liability the owning company incurred before the lease and which remained undischarged, continued as an obligation of that company from which neither lease nor statute could discharge it. No authority is needed for so plain a proposition. When did the liability arise which the plaintiff is here seeking to enforce? There can be but one answer:—when the discrimination was practiced. When was it practiced? To this also there can be but one answer:—when plaintiff was denied facility, which under like conditions had been allowed to others. This was fifteen years after the defendant company had parted with the control of its road. How then could liability attach to the defendant company for the default? The effort of appellee is to refer the default to an antecedent original obligation resting on the defendant company to allow siding privileges to adjoining landowners. We know of no such antecedent obligation. The right to siding connection as specific privilege is purely statutory. Under our acts of assembly the owners of mills and manufactories may of right connect their private sidings with railroads in their vicinity. So much was decided in Pittsburg & Lake Erie R. R. Co. v. Robinson, 95 Pa. 426. The right there spoken of, it is to be observed, is not a right incident to adjoining ownership, but to the ownership of mills and manufactories in the vicinity of the railroad; and the right is given whenever such ownership has associated with it the right, however acquired, whether through ownership of all the land between mill or manufactory and the railroad, or by privilege, through grant, license or otherwise of an intervening owner, to construct a siding from the mill or manufactory up to the line of the railroad. The one test is the right of ownership of the mill or manufactory and, with it, the right to construct a siding therefrom to the line of the railroad. When these concur the right to the connection follows. Mere ownership of land adjoining a railroad, without more, confers no such right as here claimed. The plaintiff only acquired the right to build a siding up to the line of defendant's

right of way in 1905 when she purchased the land lying between her land on which were her quarries and lime-kilns and the defendant's right of way; and not until then was she in position to demand, under the statute, a connection with the railroad. That as we have seen was fifteen years after the defendant company had leased its road. Clearly the railroad company owed no antecedent statutory duty to the plaintiff in this regard. Nor did it owe any original duty distinguishable from the original duty it owed to every citizen of the commonwealth. All such duties by the act of leasing devolved upon the defendant's lessee. Corporate liability for disregard of them attaches, of course, but it attaches only to the company that inflicts the injury. An examination of the case of Chicago & N. W. Ry. Co. v. Crane, 113 U. S. 424, cited and relied upon by appellee's counsel, will show that it gives no support whatever to their contention in this regard. There the original company had engaged, for a consideration paid it, to construct its road to a point within a certain township. After building its road conformably to the agreement, it leased it to another company which, in reconstructing the road, avoided the point designated in the agreement. At the suit of a taxpayer of the township against both lessor and lessee, it was held that the change in the road had been improperly made, and that the lessor was a necessary party for the determination of the controversy, because it had incurred whatever liability there was before it leased the road. We are unable to see anything in the case now before us that this case illustrates in the remotest degree. Admittedly there was a distinct, express agreement, for a consideration which the lessor company had received to maintain the line to a certain point, and this agreement antedated the lease. In the present case there never was any agreement, and the duty arose only after the defendant had leased its road. Without agreement to be observed, and without duty to be performed, no liability could arise. The only original duty that rested on the original company in this regard, was

the duty to treat all citizens of the commonwealth alike with respect to transportation facilities. Quite as much of an antecedent duty rested upon the lessor to see that all were treated alike with respect to rates of transportation; and yet appellee concedes that for discrimination in rates the lessee alone is liable. It is difficult to understand the logic that would exempt the lessor in the one case and make it liable in the other.

It is argued that even though the effect of a lease from one railroad to another is to exempt the owning company from liability for discrimination in transportation facilities, the rule cannot be applied in the present case because here the roads of lessor and lessee were not in fact connecting roads at the time the lease was executed, and the lease therefore was invalid, since the statute gives the right to lease only where the roads connect. In what has already been said no reference is made to the fact of an earlier equity proceeding in which this plaintiff sought and obtained a mandatory injunction against both the defendant company and the Philadelphia & Reading Railway Company as the former's lessee, requiring them and each of them, to do the very thing for the nondoing of which the present action against lessor was brought, and which has since been done by the Philadelphia & Reading Railway Company pursuant to the decree against it obtained at the instance of the plaintiff. The claim there made by the plaintiff was a distinct assertion of the validity of the lease which she here would assail; she obtained against the lessee the decree which compelled it to build the siding across the railroad's right of way to her land solely on the ground that it was lessee, and she reimbursed the lessee for the cost and expense of constructing the siding, as she was directed by the terms of the decree. She is now concluded by these facts from asserting the invalidity of the lease. "It is settled law," says TRUNKEY, J., in McQueen's App., 104 Pa. 595, "that a man who obtains or defeats a judgment by pleading or representing an act in one aspect, will be precluded from giving

it a different and inconsistent character in a subsequent suit upon the same subject." To the same effect will be found Campbell v. Stephens, 66 Pa. 314; Aronson v. Cleveland & P. R. R. Co., 70 Pa. 68. The general rule in such cases is thus stated in 16 Cyc. 799, "A claim or position taken in a former action or judicial proceeding will estop the party to make an inconsistent claim or to take a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party, where the parties are the same, and the same questions are involved." The plaintiff thus being estopped from questioning the validity of the lease, discussion on our part of the matter here sought to be raised is wholly unnecessary.

In support of the judgment it is contended that appellant is estopped by the decree in the earlier equity proceeding from asserting its nonliability in the present action for damages for unfair discrimination, inasmuch as by that decree the defendant company was adjudged in default with respect to furnishing plaintiff with siding privileges. It is undoubtedly a general rule that where in an equity proceeding the merits, or any facts material to the final determination of the controversy, have been considered and passed upon, such matters are as much res adjudicata as they would be by a judgment at law. Nevertheless, a certain distinction between a decree in equity and a judgment at law remains, for, as said in Larkins v. Lindsay, 205 Pa. 534, in determining what was or might have been involved in the decree, regard must be had to the reasons of the chancellor as well as to his decree. In the equity proceeding the Philadelphia, Harrisburg & Pittsburg Railroad Company the lessor company, was made codefendant with the Philadelphia & Reading Railway Company, the lessee. The facts material to the final determination in the case must be gained from an examination of the decree. It was as follows: "And now, 23 day of August 1907, it is adjudged, ordered and decreed that the defendant, the Philadelphia, Harrisburg and Pittsburg R. R. Co., and the Philadephia

and Reading Railway Co. shall and do proceed, without further delay forthwith to place in position, and construct, at a convenient point, opposite the adjoining land of the complainant, a switching or siding connection, and lay tracks therefrom across its right of way to the border of her land, in order that it may be connected with a siding to be constructed by said Margaret Moser, the complainant in the bill, and she is hereby authorized to connect her track with the said switching or siding connection. The cost price of the switching, frogs, necessary rails and other material requisite, and the expense of putting them in place by the defendants to be paid by the plaintiff." All that was required to support such decree was that plaintiff should have established, to the satisfaction of the chancellor, that she was the owner of a mill or manufactory in the vicinity of the railroad, that the connection she asked for was reasonably practicable, and that her request for the privilege had been refused. These were the only material facts, and all outside of them, no matter how specifically passed upon by the chancellor, were only incidentally cognizable, and as to these estoppel cannot be asserted. "The judgment of a court of concurrent jurisdiction directly upon the point is, as a plea, a bar; or as evidence, conclusive between the same parties on the same matter directly in question in another court. But neither the judgment of a court of concurrent or exclusive jurisdiction, is evidence of any matter incidentally cognizable nor of any matter to be inferred by argument from the judgment." This rule derived from the Duchess of Kingston's case has been accepted and applied in this state without qualification: Hibshman v. Dulleban, 4 Watts, 183. The particular finding by the chancellor in the equity proceeding that is here relied upon as an estoppel, is the affirmation of the following request submitted on part of complainant, "That frequent and persistent demands, covering a period of more than two years, were made by the complainant, and on her behalf upon the defendants, for a switch connection or siding to be constructed on her

twenty-six acre tract, adjoining the right of way of defendants, for use in her business," etc. Here we have a finding that for two years before the case was tried the complainant had been repeatedly and persistently demanding of this defendant a siding connection, a matter of no consequence whatever in the issue then being tried, since all that was necessary to support the decree entered in the case was that the defendant, without respect to the time it occurred, had neglected or refused to accede to complainant's demand. If there was evidence to support such finding as this in that case, it is manifest that it was introduced not for the purpose of establishing complainant's right to a siding, but for the purpose of recovering damages covering this period of two years during which complainant was denied the siding. But the court having declined to pass on the question of damages, the evidence was left without relevancy, except as establishing the fact that complainant some time or other before filing her bill had made a demand of this defendant. As to this latter fact the decree is conclusive, since without it appearing the decree would hardly have been entered, but as to the time when the first demand was made, the finding is incidental, because not entering into the decree. In the present action two items of damage were claimed; the first being the excess in cost which plaintiff was obliged to pay for the transportation by wagons of the coal she required during the two years next preceding the construction of the siding, amounting to $168.68. No effort was made to show that any demand at any time had been made of this defendant for the construction of the siding, aside from the introduction of the findings of the court in the equity proceedings, saving that plaintiff's desire for a siding had been communicated to Mr. Wetzel, who it appears was the legal counsel of both railroads. If the finding did not conclude the defendant in this subsequent action, then it was no evidence of the fact sought to be established thereby, viz: that defendant company had neglected or refused a siding upon demand made before or

during the period when this item of damage is alleged to have been sustained; and it was incumbent on the plaintiff to establish such fact by competent evidence. We have examined the evidence with care and find nothing in it that would justify an inference that any request for a siding was ever made of this defendant. That the learned trial judge in submitting to the jury this branch of the case relied wholly upon the findings in the equity case, is apparent from his answer to the defendant's second point, which was, "That the evidence in the case fails to show that any application was ever made by the plaintiff or her agents to the defendant for the installation of a siding in connection with her land." The answer was, "In the light of the record of the bill in equity filed in No. 4, October Term, 1906, and the findings of fact and conclusions of law, and the decree, the point is refused." This answer is the subject of the first assignment of error. The point should have been affirmed. This assignment for the reasons stated is sustained. The other item of damage claimed was the increased cost of the siding that was finally constructed, over and above what it could have been constructed for two years previous when the first demand for it is alleged to have been made. It was in evidence that in 1906 the Philadelphia & Reading Railway Company had submitted to the plaintiff an estimate of the cost of a proposed siding, that estimate being $400. It was further in evidence that for the siding constructed in 1908, the plaintiff paid to the Philadelphia & Reading Railway Company $969.08. The claim was for the difference, and for this recovery was had against the defendant. The decree adjudging it the legal duty of this defendant to install a siding was made August 23, 1907. True, this defendant made no attempt whatever to comply with that decree of the court, nor does the evidence disclose that any request was ever made of it to comply, or any complaint that it had not so complied, but on the other hand, the evidence shows that negotiations looking to the construction of the siding were conducted wholly and exclusively

with the Philadelphia & Reading Railway Company, which company in June, 1908, constructed and completed the siding. The cost of the siding, $969.08, was voluntarily paid by the complainant to the Philadelphia & Reading Railway Company. There is not the slightest evidence that in the construction of this siding there was any community of effort or interests between the two companies. However conclusive this evidence might be against the Philadelphia & Reading Railway Company, it is not apparent how it could affect this defendant. The offer of the former in 1906 to construct it for $400 was not in any way binding on this defendant, nor was this defendant affected by what plaintiff paid the Philadelphia & Reading Railway Company for the siding, especially in view of the claim now made that it was paid under protest, reserving to the plaintiff the right to recover back excessive charges which the plaintiff claimed were made for various items. The whole transaction from the original offer to construct for $400, down to the final payment of the $969.08, was res inter alios. Admitting the binding force of the decree requiring the defendant to construct the siding, there was no evidence as to when the defendant's liability before the decree was entered began, and there was no evidence from which defendant's liability for the increased cost of the siding could be derived. In any event it was incumbent on the plaintiff to show that increased cost resulted after the time when defendant's liability to construct the siding arose. The evidence was wholly lacking in respect to when this liability began. As we have said, it could only have arisen upon demand made, and there was no evidence as to when that occurred. The fifth point submitted by the defendant was as follows: "The defendant is not liable to the plaintiff in this action for all or any part of the cost of the installation of the siding in connection with her land by the Philadelphia and Reading Railway Co." The refusal of this point is made the subject of the third assignment of error. This assignment, for the reasons stated, is also sustained. In view of what we

have said the other assignments of error do not call for
present consideration.

The judgment is reversed.


MR. JUSTICE MESTREZAT, dissenting:

The defendant, the Philadelphia, Harrisburg & Pitts-
burg Railroad Company, constructed and operated a rail-
road from Harrisburg to Shippensburg, passing through
Cumberland county. In October, 1890, for the annual
consideration of $200,000, it leased to the Philadelphia &
Reading Railway Company its railroad, together with its
"lands, real estate, tracks, sidings, depots, freight stations,
water stations, improvements, rights of way, and other
appurtenances," for 999 years, and "also agreed to lease
to the said lessee . . . . all railroads hereafter by it ac-
quired." The lessee company has since operated the road.

Subsequent to the date of the lease the plaintiff became
the owner of certain lands adjoining the right of way of
the defendant company in Upper Allen township, Cumber-
land county. On this land are rich deposits of limestone
with quarries opened for the purpose of shipping the
stone to market, also kilns built for the purpose of manu-
facturing lime which, prior to 1906, had been sold in large
quantities for many years. In that year the plaintiff
applied to the defendant company for a siding and switch
connections between her quarries and its railroad, and the
application was refused. Subsequently she filed a bill
in equity against the lessor and lessee companies to compel
the construction of the siding connection, and a decree in
her favor was entered directing the defendants to build the
siding as prayed for in the bill. There was an averment
in the bill that damages had been sustained by the plaintiff
by reason of the refusal of the defendants to perform the
duties by law imposed upon them, and the plaintiff prayed
for the assessment of damages under the Act of June 4,
1883, P. L. 72. The court, however, declined to pass upon
the question.

The present action was brought against the lessor or

owning company to recover damages for unreasonable discrimination in the matter of furnishing facilities for transportation under the act of 1883. The case was submitted to the jury which returned a verdict in favor of plaintiff, and judgment having been entered thereon, the defendant took this appeal. It was found by the jury that the plaintiff was unduly and unreasonably discriminated against by the refusal of siding privileges, and hence she was entitled to recover damages against the party who was responsible for such discrimination. A majority of the court reverses the judgment upon the ground that the lessor or owning company is not liable to the plaintiff because it had leased its road prior to the time the plaintiff was entitled to demand siding facilities. On every other question raised by the defendant, the majority inferentially holds with the plaintiff.

With deference to the majority, I think the position assumed is untenable.

It is settled law in this country that one railroad corporation cannot, without statutory authority, divest itself of, or relieve itself from any duty or liability imposed by its charter or the general laws of the state by leasing its road and appurtenances to another: York & Maryland Line Railroad Co. v. Winans, 58 U. S. 30. The owning company cannot escape the performance of any duty or obligation imposed by its charter or the general laws of the state by a voluntary surrender of its road into the hands of lessees; and the operation of a road by the lessees does not change the relation of the original company to the public: Washington, Alexandria & Georgetown R. R. Co. v. Brown, 84 U. S. 445. Legislation authorizing the transfer of corporate franchises and property is strictly construed, and the courts have uniformly held that such transfers can only be made when permitted expressly or by necessary implication in the statute. A statute alleged to confer a power to lease will not be aided by construction: Thomas v. R. R. Co., 101 U. S. 71. If the state grants the right to lease, the lessor company remains liable for

the discharge of its duties to the public unless expressly
relieved therefrom by a statute.

The lease involved in this case was made under the
Act of April 23, 1861, P. L. 410, 4 Purd. 3880, which author-
izes a railroad company to enter into contracts for the
"use or lease" of any other railroad, and confers upon
the lessee the authority "to run, use and operate such road,
not, it will be observed, to contract or build:" Per SHARS-
WOOD, J., in Pittsburg & Connellsville Railroad Co. v.
Bedford, etc., R. R. Co., 81* Pa. 104, 112. It does not
authorize a sale of the road, nor does it empower the
lessor company to divest itself of the duties and obliga-
tions assumed under its charter. It does not expressly or
by implication permit a railroad company to sell or lease
its franchises, nor does a lease made pursuant to the
statute annul the charter or end the corporate existence
of the owning company. The company retains its cor-
porate existence and must perform the duties to the
public required by its charter, except in so far as the
statute can and does expressly authorize it to delegate
the performance of those duties to the lessee. There
was no authority vested in the defendant to lease its
unexercised franchises of appropriation and construc-
tion, and hence, no matter how ample the terms of the
demise, the Philadelphia & Reading Railway Company,
the lessee, took nothing more than the power "to run,
use and operate" the lessor's road, and to do such
other acts as were necessary to the successful operation of
the existing road: Lewis v. Germantown, Norristown &
Phoenixville R. R. Co., 16 Phila. 608. It will be observed
in the present case that it was the physical property and
not the franchises that was leased. The lessor company
does not contend that the right of eminent domain passed
to the lessee; on the contrary, since the lease was executed,
the lessor has continued to exercise its right to condemn
property for additional tracks, as is disclosed in numerous
cases in this court. In brief, it may be said that the lessor
company after the lease still retained all of its charter

powers, subject to the right of the lessee company to exercise such of those powers as, under the statute, could be and were transferred to the latter company for the operation of the road.

When the Philadelphia, Harrisburg & Pittsburg Railroad Company, the lessor and defendant here, was chartered, it became subject to the constitution and laws of the commonwealth prohibiting unreasonable discrimination in furnishing facilities in transportation of freight in this state. It is contended, and so held by the majority of the court, that when the defendant company made the lease it relieved itself from the performance of its duties to the public to the extent that it was entirely absolved from the duties imposed upon it by the constitution and laws which required it to furnish to all parties equal and reasonable transportation facilities. The lessee or operating company, and not the lessor company, should, on principle, be held liable for any injuries inflicted by the lessee or for the failure of the performance of any duty resting upon it in operating the road. It cannot discriminate as to rates or in furnishing cars; nor can it successfully defend against its own negligence or against any other default of its own. The statute expressly confers on a railroad company the power to lease to another company to operate the road, and it necessarily follows that any default, negligence, or failure of duty in operating the road must be visited on the lessee. But whatever may be the liability of the lessee company to the plaintiff for unlawful discrimination in furnishing siding facilities, the lessor company is clearly in default by reason of its failure to furnish the sidings. The constitution and laws of the state were written into and became a part of its charter and they prohibit discrimination in furnishing transportation facilities to the plaintiff or any other party entitled to them. To furnish such facilities is a continuing duty owed to the public, it is the same to-day as it was prior to the lease. It was a duty imposed on the lessor by acceptance of the charter from the performance of

which its lease could not and did not discharge it. As the authorities hold, the lessor company retains its corporate existence and its charter powers after the lease; and it necessarily follows that its duties to the public are continuing and must be performed. The majority of the court hold that, without statutory authority, it can divest itself of its duties to the public, and at the same time retain and enforce the powers and privileges granted it by the state. It continues to exercise the power to condemn land adjacent to its right of way for additional tracks. It has, since the lease and by virtue of the authority conferred by its charter, taken the plaintiff's land to widen its road and thereby increased the rentals paid it, yet this court holds that it cannot be compelled to perform the duty imposed upon it by the constitution and laws of the commonwealth to give the plaintiff siding facilities. The owning company may condemn and appropriate the plaintiff's dwelling house to widen its road, and turn over the additional trackage to the lessee: Snyder v. B. & O. R. R. Co., 210 Pa. 500, and may construct sidings on the plaintiff's land to furnish facilities to others, but, under the ruling in this case, the plaintiff cannot compel it to furnish her transportation facilities for the products of her own farm and lime kilns like those constructed by it for her neighbors. When the original appropriation for the right of way through this tract of land was made by the defendant company the damages were diminished by reason of the opportunity for siding and other advantages special and peculiar to the land. It will be conceded that prior to the lease, the defendant, under the facts found by the jury, would have been compelled to furnish siding facilities to the plaintiff as the owner of the premises. The extent to which the damages were diminished was part of the consideration paid for the siding privileges. Shall the defendant retain the consideration and refuse the siding? Nearly a century ago the highest judicial tribunal in this country declared in Dartmouth College v. Woodward, 17 U. S. 518, and all the courts of this coun-

try, federal and state, have since enforced the doctrine, that the charter of a corporation is a contract between the state and the incorporators within the meaning of the constitutional limitation that a legislature can pass no law impairing the obligation of contracts. Adhering to this doctrine, this court has never permitted the people, through the legislature, to infringe in the least on the rights, privileges, powers or franchises of a corporation. Can it be possible that the same doctrine of inviolability of contract, in the absence of preventive constitutional legislation, will not protect the other party to the contract—the state—and compel the corporation to keep its covenants and perform its constitutional and statutory duties to the public?

The covenant in the lease that the lessee would operate the road and perform all the lessor's obligations to the public is valid and binding inter partes, but it does not relieve the lessor from the performance of its duties to the public: Nugent v. Boston, Concord & Montreal R. R. Co. (Me.), 6 Am. St. Rep. 151. Our statute does not and could not so provide, as legislation does in some jurisdictions, and hence the lessor could not thus divest itself of its charter obligations.

It follows that in this action the defendant cannot set up as a defense that it had leased its road before the plaintiff was entitled to a siding, the controlling reason assigned by the majority of the court for ruling the present case against the plaintiff.

There is another and conclusive reason why the vital and controlling question in this case must be resolved against the defendant company. The plaintiff filed a bill, January 16, 1907, against the defendant company and its lessee averring, inter alia, that on or about May 1, 1906, she applied to the defendants for the construction of a siding from their lines near her quarries and lime kilns and for the necessary switching connections so as to enable her to ship her product to market, and from that time to the filing of the bill had made frequent applica-

tions to the defendants' officers for a siding and switching connections but that the defendant companies had refused to make them. It is further averred that the defendants are common carriers under the laws of the state and as such are required to grant the plaintiff the same shipping facilities that they grant to other persons under like circumstances; that the defendant companies were unjustly and illegally discriminating against the plaintiff and thereby causing her to suffer great damage and loss in her property and business; and praying for a decree that the defendant companies should proceed to construct a siding and switching connections and give the plaintiff the same facilities for shipping and transporting her product to market that were furnished to other shippers and owners of lime and stone on the defendants' lines. The defendants filed an answer in which, inter alia, they admit that an application had been made by the plaintiff for switching connections and the construction of a siding along their railroad, and that the same "was refused wholly because, upon a careful investigation of the situation and business of the complainant, it was found inexpedient and unnecessary for the public service, and would simply be a private convenience for the complainant alone." The answer admits that the defendants are common carriers but denies the illegal discrimination.

Testimony was taken and the case was disposed of on it and the bill and answer. The chancellor found, under the issue thus made by the pleadings, that after preliminary negotiations by correspondence with the defendants' officers, the plaintiff, on May 10, 1906, made a formal request for the siding and offered to pay the entire expense of the installation, and comply with any reasonable regulation of the company; that the defendants' general superintendent unconditionally refused to grant the plaintiff a siding on June 8, 1906, and thereafter continued to decline to furnish such transportation facilities; that sidings under like conditions and circumstances were furnished to other owners of land contiguous to defendants' railroad;

that the plaintiff, upon compliance with the regulations of the defendant companies as to the payment of the cost of construction, has, as an adjoining landowner, the right to a private switch connection with the defendants' railroad, and "that the defendant companies, in furnishing siding facilities to competitors of the complainant, and refusing such facilities to plaintiff, under conditions and circumstances similar in all essential points, have been guilty of an illegal discrimination, in violation of the provisions of the constitution of Pennsylvania, and of the act of June 4, 1883." Pursuant to these findings the chancellor on August 23, 1907, entered a decree that the defendant companies "shall and do proceed, without further delay forthwith to place in position, and construct, at a convenient point, opposite the adjoining land of complainant, a switching or siding connection, and lay tracks therefrom across its right of way to the border of her land, . . . . the cost . . . . to be paid by the plaintiff." The chancellor, for reasons stated, refused to award damages, but entered, as part of the decree, that "this refusal, however, is without prejudice to her right to proceed to recover the same in another action." This reservation from the operation of the decree permitted the plaintiff to bring a subsequent action for damages: 23 Cyclopedia of Law and Procedure, 1145. No appeal was taken from the decree, and the siding and switching connections were furnished in pursuance of it.

The present action was brought July 8, 1908, to recover damages, as averred in the statement, resulting from the illegal discrimination against the plaintiff by the defendant company which was found and decreed to exist in the equity proceeding. With the exception of the additional averment of the equity proceeding in the statement in the present action, the latter and the bill in equity aver substantially the same facts. On the trial of the cause the record in the equity proceeding was put in evidence, and the plaintiff proved by proper evidence, aliunde the equity record, the damages which she alleged in her statement

were caused by the illegal discrimination by the defendant companies. She did not rely upon the finding of the chancellor as to the items or amount of damages which she sustained, but proved them on the trial of this case. She was not required to prove again, what was found by the chancellor, that a demand for a siding had been made or when it had been made, nor that she had been illegally discriminated against by the defendant company. Those were facts averred in the bill and were material and indispensably necessary, under the statute, to support the decree entered in the equity proceeding. The chancellor distinctly found in the equity proceeding that a demand for the siding and switching connections was made on May 10, 1906, and was unconditionally refused on June 8, 1906. These findings were a prerequisite to an intelligent and proper decree requiring the defendant company to furnish the siding facilities. Without a demand, which necessarily implies the date thereof, and without a definite refusal to comply therewith, the decree would have been lacking in material facts to support it. The liability of the defendant for damages began immediately after June 8, 1906, the date of the unconditional refusal to comply with the plaintiff's demand. It did not and could not arise before. As correctly said by the learned trial judge in his opinion in this case: "The issues (in the equity case) were fully and fairly made up—whether there had been an unlawful discrimination by the defendants, the Philadelphia, Harrisburg & Pittsburg Railroad Company, and the Philadelphia & Reading Railway Company, against the plaintiff, and also whether she was entitled under the law to have them establish a siding and switching connections. Both of these questions were resolved in her favor by a decision rendered on August 23, 1907. No appeal was taken from the findings and decree of the court, and a siding and connections were installed in May, 1908, and the charges for the same paid on July 3, following."

The plaintiff proved on the trial of this case, to the very

cent, the damages which resulted to her from the illegal discrimination which the chancellor found to exist. The decree, as will be observed, was entered against both companies, and hence both and each were liable for the tort resulting in the plaintiff's injuries. If, in addition to finding the illegal discrimination, the learned chancellor had awarded damages against the defendant companies, it would not be pretended that the decree could not have been enforced against the property of either of them. Both of the defendants were found to have been guilty of the tort which caused the plaintiff's injuries. The chancellor therefore necessarily found that each of the defendants had contributed to the plaintiff's injuries by illegal discrimination. Had he found no culpability in one of them, the decree would necessarily have not gone against the innocent defendant. The material facts found in the equity case were therefore conclusive in a subsequent action against both or either of the defendants, for torts are joint and several, one may be answerable for the wrong done by both tort feasors—it cannot be apportioned: Philadelphia v. Collins, 68 Pa. 106.

If there is anything settled in the law of this state, it is that a judgment, sentence, or decree of a court of competent jurisdiction is conclusive, not only as to the judgment or decree, but of every fact directly or necessarily adjudicated, or which was necessarily involved in or was material to the adjudication. That principle is settled by a beadroll of cases decided by this court. The rule applies as well to decrees in equity as to judgments at law: Westcott v. Edmunds, 68 Pa. 34; Columbia Natl. Bank v. Dunn, 207 Pa. 548; Klick v. Gernert, 220 Pa. 503. In the equity suit the right to the siding and switching connections, the discrimination in not furnishing them, the date of the discrimination, and every other fact material to the adjudication, were directly involved and were found against the defendants. The present action was brought to recover damages for the illegal discrimination and the equity proceeding is set up in the plaintiff's state-

ment, and the record was put in evidence on the trial of the cause. That decree remains unimpeached and is therefore conclusive as to all facts material to support it. The facts thus found by the chancellor are therefore conclusively evidential that the plaintiff was denied a siding and switching connections with the defendant companies' railroad after a specific demand in May, 1906, and a refusal in June, 1906, and that the defendants in furnishing siding facilities to competitors of the plaintiff and refusing such facilities to her under conditions and circumstances similar in all essential points, were guilty of illegal discrimination, in violation of the provisions of the constitution of Pennsylvania, and of the act of June 4, 1883.

While the plaintiff may, under the law, rely upon the finding by the chancellor that a demand was made by her upon the defendant company to install the siding, yet she is not compelled to do so as there is positive evidence by an official of the operating company given on the trial of the present action that a demand was made and when it was made. A reading of the testimony discloses that both upon the examination in chief and cross-examination of the witnesses, with one exception, the parties treated the demand and date thereof by the plaintiff as an established fact. Mr. Stackhouse, superintendent of the operating company, was called as a witness by the defendant and while on the stand testified as follows: "Mr. Sadler: Q. At the time demand was originally made by Miss Moser for the installation of the siding, your double tracking had not begun around Bowmansdale, had it? . . . . A. Her application was made for a siding before my time. I have her first application on file here— it was before my time, but shortly after I came there she communicated with me concerning this siding, as well as Mr. McKeehan—I have a number of those letters here. Mr. Wetzel: Q. When was the first application—have you the first letter? A. May 13, 1905. I guess it is 1904. I am not certain whether it is 1904 or 1905." It also appears in the testimony offered in this case that the siding was

constructed in pursuance of the compulsory proceeding in equity resulting in the decree compelling its installation. It is contended, however, that in the ruling which is the subject of the first assignment of error, the learned judge relied for this fact upon the findings in the equity case. Concede that he did, the testimony above quoted, given subsequently to his ruling, cured any error which might have arisen upon his relying upon the equity proceeding. It will be observed that the last answer in the testimony quoted was given in response to a question by appellant's counsel. The appellant company therefore is not in a position to raise the question that the plaintiff failed to show in the present action that a demand was made upon it for the siding.

The reversal of the judgment of the court below on the ground of the nonliability of the lessor company by reason of the prior lease is, I submit, sustained neither by reason nor precedent, and establishes a principle fraught with the gravest consequences to the property owners of the state. I would affirm the judgment.