## Davidson v. Davidson, Exrx., Appellant.

Argued May 21, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Thomas F. Gain,* with him *C. B. & J. H. Price, F. P. Benjamin, M. J. Martin* and *Francis Shunk Brown,* for appellant.—Even without the express order of the Supreme Court preserving defendant's right to present his defense, the findings of the judge and the interlocutory decree were subject to correction and review: Beatty v. Safe Deposit Co., 226 Pa. 430; Rowley v. Rowley, 289 Pa. 171; Perkins v. Fourniquet, 6 How. (U. S.) 206; Sullivan v. Steel Co., 222 Pa. 72; Dunlap v. Spiese, 250 Pa. 394.

We believe it is clear under the authorities that, wholly independent of the order preserving defendant's right to present his defenses, a finding dealing with a mere matter of evidence incidental or collateral to the issues leading to the decree, would not be res judicata either in further proceedings in the same suit or in a different suit between the parties: Rowley v. Rowley,

289 Pa. 171; Moser v. Ry. Co., 233 Pa. 259; Penna. Laundry Co. v. T. & T. Co., 74 Pa. Superior Ct. 329; Elliott v. Ins. Co., 76 Pa. Superior Ct. 534.

*George Wharton Pepper*, with him *John M. Gunster, Charles P. O'Malley, W. B. Bodine* and *John P. Kelly*, for appellee.—The preliminary decree for accounting was res judicata as to all matters raised in this appeal: Crennell v. Fulton, 241 Pa. 572; Rich v. Black & Baird, 173 Pa. 92.

In McEvoy v. Cab Co., 267 Pa. 527, it was held that an act for which a court of equity will set aside or annul a judgment between the same parties has relation to fraud extrinsic or collateral to the matter tried by the first court, not to fraud in the matter on which the judgment was rendered: Sallada v. Mock, 277 Pa. 285.

Entirely apart from the question of the suppression of the book of accounts by the trustee and the effect of such suppression, the court below held that in any case the burden is on the trustee to make a proper and satisfactory accounting; if he does not do so, every intendment is against him; and all doubts and obscurities in the account are taken adversely to the trustee. This has long been the settled law of this State: Landis v. Scott, 32 Pa. 495; Stewart's Est., 140 Pa. 124.

While the Act of 1895 uses the word "preliminary," as pointed out by this court in Robinson v. Fulton, 262 Pa. 265, the decree is final for purposes of appeal: Moser v. Ry., 233 Pa. 259; Penna. Laundry v. T. & T. Co., 74 Pa. Superior Ct. 329; Elliott v. Ins. Co., 76 Pa. Superior Ct. 534.

The Supreme Court will not reverse findings of fact by a master based on evidence: Wolf v. Augustine, 197 Pa. 367; Stocker v. Hutter, 134 Pa. 19; Bedell's App., 87 Pa. 510; Warner v. Hare, 154 Pa. 548; Fassitt v. Seip, 249 Pa. 576, 596; Fritz's App., 160 Pa. 156.

OPINION BY MR. JUSTICE FRAZER, November 25, 1929:

When this case was first before us, Davidson v. Davidson, 262 Pa. 520, we affirmed the decree of the chancellor finding defendant to be trustee for plaintiff and ordering the former to account for all property coming into his hands and possession as such trustee and to which he took title for plaintiff's benefit, as shown in the findings of the chancellor. Subsequently, pursuant to this order, defendant filed an account, to which exceptions were taken by plaintiff. Following this stage of the litigation, defendant died, and his widow and executrix was substituted as party defendant. Upon agreement of counsel, the court appointed a special master to take testimony on exceptions to the account filed by defendant, state an account himself between the parties and report to court. Following many hearings and review of the evidence, extending over a period of five years, the master filed his report, awarding a cash payment by defendant to plaintiff of $164,869.59, with interest, and the delivery to the latter of designated securities of a total value of $210,754.38. Exceptions by both parties to the report were heard by the court in banc, and in an extended opinion the report was sustained and a decree entered nisi. Exceptions to the opinion of the court were, save three minor ones, dismissed and a final decree entered, from which the appeal here is taken.

The record is quite voluminous, comprising approximately 2,400 printed pages, aside from briefs of counsel. We are confronted with 45 assignments of error, from which we extract the information that the appeal is based principally on two leading contentions by appellant, as indicated by the statement of questions involved, namely, that nothing was adjudicated finally, by the decree of the chancellor and its affirmation on the former appeal, except liability of defendant to file an account; and, second, that, by reason of adherence of the master to the doctrine of res judicata as applicable to the case, and his interpretation of our decree that it dis-

posed finally of all matters litigated except the right of appellant to set up particular defenses, defendant was prevented from making adequate presentation of such defenses and from offering testimony sufficient to support them.

The appeal to this court from the decree of the chancellor was taken under the provisions of the Act of June 24, 1895, P. L. 234, authorizing an appeal in equity proceedings from the preliminary decree of the court requiring an accounting. In affirming the original decree in this case we said: "The decree of the court below is affirmed, without prejudice, however, to the right of defendant to set up such defenses as he may have either to the stocks to be included in the account or their amounts and values." We further finally determined, specifically, that the agreement which the court below found to be a trust agreement, was a valid enforceable and continuing one, not barred by the statute of limitations; that the transactions between the parties constituted an open running account, the last item consisting of a payment within the limitation period before filing the bill, as found by the chancellor; and that the court did not abuse its discretion in refusing a motion for continuance of the case on the ground that the physical condition of defendant prevented him from being present at the trial, as the evidence of the physcian showed his condition was not such as would indicate serious risk in attending the hearing.

The facts are found in sufficient detail in our disposition of the former appeal, and we need only repeat here that the parties, brothers, executed an agreement on August 30, 1901, whereby a complete and final settlement was made of all stock and financial transactions between them previous to that date, and, as set forth in the written memorandum of their contract, that plaintiff owed defendant $21,543.35, with interest from the date of the agreement, defendant taking as security for that debt 250 shares of lumber company stock owned by

plaintiff, and agreeing further that the former should hold for account of and subject to the order of plaintiff 140 additional shares of the same corporation stock, also the property of plaintiff. This agreement was enlarged on the date of its execution by an oral contract to cover subsequent transactions to be carried on under the general pact, and included also an arrangement for signing in blank and delivery by plaintiff to defendant of such collateral notes as the latter might request, defendant having the right to use such notes for his own benefit.

We are at a loss to follow the reasoning of counsel for appellant by which they reach the conclusion that "the affirmance by this court of the decree for an accounting ......did not change but rather emphasized its interlocutory character; and the want of finality in the findings was made clear by the specific reservation to the defendant of the right to set up his defenses." The only support apparent for that declaration is that defendant's counsel predicate it upon an incorrect conception of the doctrine of res judicata as applied to this appeal, authorized by the Act of 1895. This statute, enacted for the purpose of conclusively ending disputes over the question of accounting, in equity proceedings relating to such controversies, places an appeal from an interlocutory decree on a par with an appeal "allowed by law from final decrees." It lifts the former to the high state of finality, in cases like that now before us, so that when we affirm, as we did in the former appeal, a preliminary decree of the chancellor, the final determinative force and authority of this court invest our judgment with unquestionable conclusiveness. If, in the pronouncement of that judgment, we reserve to defendant the right to set up defenses, specified as to their kind and extent, we afford an opportunity, at a subsequent investigation before the court below, to determine questions collateral and incidental, such as are the defenses allowed in this dispute. In other words, our decree in the first appeal affirmed the decree of the court below in its

48

entirety, leaving to defendant the right to present collateral matters not particularly raised by the pleadings as filed. If, then, we disregard the obvious purpose and meaning of the Act of 1895 and accept the contention of appellant that our former decision settled only the question of compulsory accounting by defendant, and nothing more, notwithstanding the comprehensive scope of the chancellor's decree, we would be obliged to declare, in effect, that a judgment by this court under the act does not affect and control, in its entirety, a decree of the lower court brought here, as in this case, for our consideration and final determination. Clearly the legislature, in enacting the statute referred to, had no such thought in mind; rather, the thought of finality ruled, as is made evident by the provision that the appeal shall be "in the same manner as is allowed by law from final decrees"; and we find no provision in the act which tends to qualify the evident legislative intent that our decree under its provisions shall be finally determinative as to the entire scope of the judgment appealed from, leaving it within the range of our judgment to sustain the whole or a part of it. This interpretation of the Act of 1895 was expressed and established most decisively by this court in Rich v. Black & Baird, 181 Pa. 290, 293, where we said: "It is a mistake to suppose that the questions involved in that appeal [brought from an interlocutory decree of the court below] were not all definitely settled by our affirmance of said decree and remittance of the record to the court below for further proceedings. If there is any merit whatever in the provisions for appeal 'in equity cases of account where the liability to account is in issue,' it must be in the fact that all questions relating to such liability will be thus finally settled by the appellate court before further proceedings are had in the trial court"; and as we said in Havir's Est., 283 Pa. 292, 299, "where, as here, the former controversy was between the same parties and concerned the same general question as now involved,......though a

view of law there applied may be departed from, all issues of fact there decided, concerning the parties entitled, become res judicata as between such parties"; see also Moser v. Phila., etc., R. Co., 233 Pa. 259; Swissvale Boro. v. Dickson, 269 Pa. 19. Certainly, then, our reservation as to defenses allowed defendant here cannot be held, within the doctrine of res judicata and a proper interpretation of the terms of the Act of 1895, as indicating or showing a "want of finality" in our former decree, as appellant's counsel contend.

Nor is there more secure basis for the claim of appellant than that the whole case "was conducted and decided by the master and the court on the theory that every statement in the findings and interlocutory decree concerning the relations of the parties, their agreements and dealings, were res judicata and final; and that no evidence could be received or considered that would in any way conflict with these findings." The record before us does not in the least sustain that complaint. Indeed, we find a convincing demonstration of leniency toward defendant by the master, since in various instances he positively rejected the application of res judicata to matters mentioned in the chancellor's decree and which had been specifically determined at the trial; and, influenced doubtless by a conscientious desire to do exact justice to the contending parties, he unnecessarily went back of our affirmation of the decree of the court below and opened questions for the admission of evidence concerning them, which, as material issues in the case, were concluded finally by that affirmation. It is true, he resolutely stood for the conclusive adjudication of the subject-matter of the chancellor's decree; that is, that defendant is a trustee for plaintiff; that he must account for all property held and to which he took title for the benefit of plaintiff; that he account for a specified number of shares of stocks of designated corporations, together with all allotments upon increases of capital stocks held in trust; account for all dividends

received, amounts expended on account of purchases of stocks subsequent to the trust agreement of 1901, and for sums paid to him by plaintiff and those he paid to the latter. These of course, were the leading and vital issues involved and determined at the trial before the chancellor; but the scope of the application of the doctrine of res judicata here embraces more than these chief questions. In Cromwell v. County of Sac, 94 U. S. 351, 352, the court said "it is a finality to the claim or demand in controversy, concluding parties and those in privity with them,......as to any matter which was offered and received to sustain or defeat the claim or demand," and as set forth in 1 Van Fleet's Adjudication, page 2, "a matter or question in law or in fact is res judicata, or set at rest, as to adverse parties, if it was a material issue in the proceeding directly involved and not merely cognizable nor collaterally in question, and was adjudicated, after a contest, by a final judgment on the merits." Applying this principle to the case in hand, we find these further issues and questions material to the claim in demand and flowing directly from it that were also determined in favor of claimant by the findings of the chancellor and covered by his decree, and accordingly were finally disposed of; namely, that the agreement constituted a valid trust, continuing and not barred by the statute of limitations; that the transactions were an open running account; that collateral notes signed in blank by plaintiff to be used by the trustee for his sole benefit were accommodation notes; that defendant was authorized to sell plaintiff's stock, but not however without the latter's consent, in which case he was required to replace it; that there existed a book, which appellant denied ever existed, in which the parties kept mutual accounts, the production of which would have been of assistance to plaintiff in the proof of his claim and which, as the chancellor found, was withheld by appellant for the purpose of depriving him of such evidence. These were material questions, all of which

were determined at the original trial and were accordingly fairly and necessarily within the scope of the decree, as affirmed by this court. As such, the master might properly have refused admission of further evidence concerning them, except where, in his judgment, they came within the range of the reservation for defenses that by our former decree we allowed appellant. The master exercised his judgment in that particular at the hearings before him; he exercised it very broadly and liberally, and instead of, as appellant complains, conducting and deciding the case on the theory that every statement in the findings and in the interlocutory decree was res judicata, he departed from such theory many times and afforded appellant a wide road for the admission of whatever defenses she might properly present.

With the record of this case before us, of nearly 3,000 pages, more than 2,000 of which are devoted to testimony taken before the master, we think the complaint of appellant that "defendant has not been permitted to have heard and considered the defenses which this court said she has the right to set up," is as unwarranted as it is unfounded. Assuredly no avenue was barred to appellant to profit to the fullest extent by our allowance of such defenses. As we have already said, the master received testimony at his hearings and gave able consideration in his report to matters unquestionably finally concluded by our affirmance of the original decree. However, in each of these instances no adverse results came to plaintiff's cause, since the facts found by the chancellor relating to such matters were in all respects again established by the testimony heard by the master.

It would serve no helpful purpose to more extensively discuss the complaints of appellant; we will refer however to one further question, which forms the basis of defendant's ninth assignment of error. We are asked to determine whether there is sufficient evidence to sustain the finding that plaintiff's collateral notes authorizing

sales of stock pledged were for the accommodation of the trustee. This matter was a distinct issue raised by the pleadings. The chancellor found that plaintiff, subsequent to the agreement of 1901, signed as maker numerous notes at various times, delivered them to appellant's decedent, who, as occasion required, filled in the dates and amounts, with his endorsement, and discounted them at banks, receiving for himself all resulting benefits. The court below, in sustaining the master's report, held that the matter of these notes was res judicata by our decree, as in fact it was. The master, however, ruled that testimony should be admitted before him as to their nature and use by the trustee, in conformity with our allowance of appellant's defenses. The transactions as to them are plainly disclosed by the evidence. At times, when the trustee was in straitened financial circumstances and desired to borrow money, or wished to purchase stocks, he was accustomed, under the arrangement of the trust agreement, to request plaintiff to sign notes in blank, frequently half a dozen at a time, and deliver them to him; whereupon he discounted the obligations, attaching as collateral either his own stocks or those of plaintiff, which he held in trust. The evidence is clear that appellee at no time received any benefit whatever from these transactions. A number of the notes were for renewals, but in every case were used for the personal profit of appellant. The testimony also discloses that it was directly understood by and agreed between the parties at the times plaintiff signed and delivered the notes, that they were purely accommodation notes, for the benefit of the trustee. No notice of discount or call for payment was at any time made upon appellee; he paid none of them, neither was he asked to pay them. They were all eventually paid by defendant, and at each payment he invariably took up and retained the collateral, whether it was his own or belonged to plaintiff. These transactions created a distinct accommodation contract between plaintiff and defendant,

whereby the former was to receive none and the latter all benefits derived from the proceeds. Nor was there a preëxisting debt, for, as the evidence proves, there never was a time, after the trust agreement of 1901, that the value of the stocks, owned by appellee and held in trust by the trustee, did not exceed any amount the former owed the latter. The evidence plainly proves the notes were merely for the accommodation of the trustee, as found by the chancellor and the master and approved by the court below.

Litigation must end somewhere; but to what distant future might it not possibly extend in this case if we should reopen and allow a retrial of all questions settled by our decree, except the sole one of compulsory accounting? It is reasonably conceivable that upon such retrial and another adjudication by the court below, we would again meet the same situation as is now at hand, with nothing more involved than the same controversy, the same parties, the same proofs, the same judicial determinations, and, indeed, the same arguments.

The evidence is ample to sustain all findings by the master and chancellor.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.